Argued and submitted October 29, 1998, reversed and remanded in part; otherwise affirmed January 13, 1999

STATE OF OREGON,
*Respondent,*

*v.*

CORNELIUS DALE VANN,
*Appellant.*

(9607-35291; CA A96684 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

DEMOND LEWIS CLARK,
aka Crane Antawan Niblack,
*Appellant.*

(9607-35294; CA A96685)

STATE OF OREGON,
*Respondent,*

*v.*

RHONDA A. SMITH,
aka Rhonda Evans,
*Appellant.*

(9607-35292; CA A96686)

STATE OF OREGON,
*Respondent,*

*v.*

SAMUEL LAMONT LEWIS,
*Appellant.*

(9607-35293; CA A96687)
(Cases Consolidated)

973 P2d 354

Eric Johansen, Deputy Public Defender, argued the cause for appellants. With him on the brief was Sally L. Avera, Public Defender.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Edmonds and Haselton, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

In a joint trial to a jury, defendants were convicted of robbery in the second degree.[1] ORS 164.405. At a hearing after the trial, defendants moved for a mistrial based on an irregularity in the verdict. The trial court denied the motion and this appeal followed. We reverse.

The undisputed facts are taken from the trial and hearing record and the trial court file. After the jury returned its verdicts, the court asked the jury if its verdicts were unanimous. The presiding juror replied, "Not all of them." Defendant Smith then requested a poll of the jury, which the jury asked to be done in writing. The court directed the jurors to get paper from their juror notebooks and informed them as to how they should record their verdicts. The court then collected the jurors' polling slips and asked, "[Do] I have everybody's slip?" After pausing, it read aloud the results of the written poll, concluding that a sufficient number of jurors had concurred in the guilty verdicts on the second count—robbery in the second degree—as to defendants Clark, Vann, Smith, and Lewis. The court further noted: "All the verdicts are proper. I will receive them all, and I'll put all the slips in the record." The court then discharged the jury, telling the jurors that their "jury service is over" and thanking them for their service. The court set a sentencing date for January 3, 1997, and signed trial orders reflecting the verdicts.

At the hearing on January 3, the court did not proceed to sentencing but, rather, advised defendants that there was "an irregularity in the jury verdict." It explained that the day after the conclusion of the trial, it had reviewed the polling slips and "discovered * * * that only 11 jurors returned slips." The court summarized how its discovery affected the verdicts:

"It does not affect the verdict in Mr. Clark's case, because Mr. Clark's case is unanimous. So there are 11 jurors who voted to acquit [on the first count and] who voted to convict

---

[1] Defendants also were charged with robbery in the first degree. ORS 164.415. However, the jury acquitted all defendants on that charge, and the court collected polling slips to support those verdicts. Thus, that charge is not before us in this appeal.

Mr. Clark on the second count * * * so that verdict is not a problem.

"But other than that, all of the not-guilt[y] verdicts are proper. They are all unanimous. So the not-guilt[y] verdicts are not a problem. But the guilty verdict [on the second count] in Mr. Vann's case, Mr. Lewis's case and Ms. Smith's case are all [9] of 11."

The court then stated that it believed that juror Marquez had failed to return a polling slip, that it knew where Marquez was living, and that it had attempted to contact her. The court wanted to "make an inquiry * * * [as to] whether [Marquez] turned in a slip" and "to poll [Marquez] like we did all the other jurors." The court also noted that it intended to do so without the parties and their lawyers present. However, as of January 3, Marquez had not responded to written requests to contact the court. The court then set another hearing for January 14 and continued its effort to locate Marquez.

At the hearing on January 14, the court still had not found Marquez. The court asked the investigator who was working on the case to testify. He explained that Marquez had been out of town and had been expected to return on January 13, the day before the hearing, and that he had no other information. Defendant Lewis then moved for a mistrial and defendants Clark, Vann and Smith joined in that motion. The court asked for written motions from all parties and set another hearing for February 5.

On January 24, Marquez appeared in court and testified under oath about her verdicts. Marquez testified that she did not turn in a polling slip because she was not given a piece of paper. Marquez's testimony then went as follows:

"THE COURT: * * * First, I'm going to talk about the Robbery in the First Degree charge, and that's the one in which the jury said that the people were not guilty. Okay. On [that charge], where the jury said not guilty, Mr. Clark was one of the people that was charged.

"MS. MARQUEZ: Yes.

"THE COURT: Did you vote guilty or not guilty on that charge?

"MS. MARQUEZ: On that Mr. Clark?

"THE COURT: On Mr. Clark, on the Robbery in the First Degree case.

"MS. MARQUEZ: I think I vote not guilty.

"THE COURT: Okay. The way the majority voted.

"MS. MARQUEZ: Uh-hum.

"THE COURT: On Mr. Vann, another one of those people on the same charge?

"MS. MARQUEZ: I think I vote he's guilty.

"THE COURT: Not the way the majority vote?

"MS. MARQUEZ: Not the majority—let me be sure. I think—I change my mind. I went to the majority vote.

"THE COURT: For everybody?

"MS. MARQUEZ: For everybody.

"THE COURT: So Mr. Clark you then voted with the majority? On Mr. Vann you voted with the majority?

"MS. MARQUEZ: Yes.

"THE COURT: On Ms. Smith you voted with the majority?

"MS. MARQUEZ: Uh-hum.

"THE COURT: On Mr. Lewis you voted with the majority?

"MS. MARQUEZ: Yes, uh-hum.

"THE COURT: And then on the other charge, the Robbery in the Second Degree case, where the jury voted guilty, did you vote guilty then—you voted with the majority on Mr. Clark?

"MS. MARQUEZ: I went with the majority.

"THE COURT: And on Mr. Vann?

"MS. MARQUEZ: And on Mr. Vann.

"THE COURT:    On Ms. Smith and on Mr. Lewis?

"MS. MARQUEZ:    Yes."

At the hearing on February 5, the parties argued the merits of defendants' mistrial motion. The trial court denied the motion.

■■    Preliminarily, the state suggests that "defendants' motions for mistrials may not have been timely." An irregularity in the verdict must normally be raised at the time the verdicts are received. *State v. Kelley*, 114 Or App 262, 265, 835 P2d 145 (1992), *rev den* 315 Or 312 (1993). That requirement allows the trial court to remedy the error. *See State v. Shafer*, 222 Or 230, 235, 351 P2d 941 (1960) (a principle underlying timeliness of mistrial motion is that the trial court have the ability to "mend the harm"). Here, however, the alleged error was not known by defendants until three weeks after the trial had ended and, thus, could not have been raised at trial. Moreover, when the trial court made the irregularity known, it encouraged the lawyers "to start thinking" about the polling problem and whether a mistrial was necessary, and, after receiving written motions, the court ruled on that issue. Because defendants did not learn of the irregularity until after trial, and because the trial court opened the error for consideration and argument, we hold that defendants' motion is subject to review.

In defendants' first assignment of error,[2] they argue that the court never received a "complete" verdict as to Vann, Lewis and Smith on the second count—robbery in the second degree—and that, after discharging the jury, the court had no authority even to recall one of them for questioning. Defendants argue that, because a "complete" verdict was not received by the court, they are entitled to a mistrial. We agree.

■■    The determination of whether to grant a mistrial is committed to the sound discretion of the trial court. *State v. Larson*, 325 Or 15, 22, 933 P2d 958 (1997); *State v. Neal*, 143 Or App 188, 192, 922 P2d 717, *rev den* 324 Or 488 (1996).

---

[2] Defendant Clark does not join in this assignment of error because the jury's guilty verdict as to him was legally sufficient.

Thus, we review the trial court's ruling for abuse of that discretion. *Id.* We will deem a denial of a mistrial as error only when a defendant's ability to obtain a fair trial has been impaired. *State v. White,* 303 Or 333, 342, 736 P2d 552 (1987); *State v. Grenawalt,* 86 Or App 96, 98, 738 P2d 232, *rev den* 304 Or 405 (1987).

In a felony criminal action in which there are 12 jurors seated, at least 10 jurors must concur to render a legally sufficient verdict of guilty or not guilty. Or Const, Art I, section 11; ORS 136.450. After the verdict is given, a defendant "may request that the jury be polled[,]" ORCP 59 G(3),[3] which "is a procedure designed to test the numerical validity of a verdict at the time it is rendered." *State v. Mendez,* 308 Or 9, 15, 774 P2d 1082 (1989). In polling the jury, the trial court asks each juror whether the verdict is his or hers, and, to receive a legally sufficient verdict in a felony case, the court must observe 10 of 12 answers "in the affirmative." ORCP 59 G(3). If fewer than 10 jurors affirm the verdict, the court "shall" send the jury out for further deliberations. ORCP 59 G(3). Further, in a criminal action, the jury "may, in the discretion of the court, be polled in writing." ORS 136.330(1). If a written poll occurs, the court similarly must receive at least 10 individual written votes that affirm the jury's verdict.

It is the trial court's obligation to see that the verdict is in proper form. On a request for a poll, the court's duty includes confirming that the verdict is supported by a proper number of assenting votes. That procedure is essential to the integrity of the jury process because it "eliminat[es] any uncertainty as to the verdict announced by the [jury] foreman." *State v. Lewis,* 18 Or App 206, 209, 524 P2d 1231 (1974) (internal quotations and citations omitted). That is so because polling requires each juror to assume individual responsibility for the verdict, *id.,* which demonstrates whether each juror in fact concurred in the verdict or whether the juror's apparent assent was the result of mistake or coercion. Charles E. Torcia, 4 *Wharton's Criminal Procedure,* § 513 at 318 (13th ed 1992).

---

[3] ORCP 58 B, C, and D and ORCP 59 B through F and G (1), (3), (4) and (5) are made applicable to criminal actions by ORS 136.330(1).

■ Here, at trial, the court received only 11 polling slips, which accounted for only nine affirmative votes of guilty on the second count as to Vann, Lewis, and Smith. Thus, at that point and as to those counts, the court had not received legally sufficient verdicts. However, as the trial court explained, it did not notice the verdicts' insufficiency at that time: "The problem was I was expecting that I had 12 answers, and rather than counting them, which would have been a logical thing to do, I simply looked at how many minority answers I had and didn't count." As a result, the court did not attempt to correct the verdicts, as required by ORCP 59 G(3). Instead, it received the insufficient verdicts and discharged the jury. In doing so, the trial court did not fulfill its obligation to confirm the verdict and therefore erred.

■ Our analysis does not end there, however, because the court took steps to rectify that error. In its subsequent poll of Marquez, the court obtained testimony that corrected the verdicts' insufficiency by showing that 10 of the 12 jurors had concurred in the guilty verdicts. Thus, the question before us is whether that curative act rendered harmless the court's initial error.

■ Our review of Oregon precedent reveals no case law addressing that issue. However, among other jurisdictions, the general rule in criminal cases appears to be that a verdict becomes final and *unalterable* once the jury has dispersed and is no longer under the court's control. *U.S. v. Marinari*, 32 F3d 1209, 1213-14 (7th Cir 1994).[4] Once a verdict has been

---

[4] *See also People v. McNeeley*, 216 Ill App 3d 647, 575 NE2d 926, 929 (1991) (in jury reassembly cases, "the pivotal question is whether the trial court lost control of the jury"); *People v. Bonillas*, 48 Cal 3d 757, 771 P2d 844, 850, *cert den* 493 US 922 (1989) ("jurisdiction to reconvene the jury depends on whether the jury has left the court's control"); *People v. Davis*, 105 Ill App 3d 549, 433 NE2d 1376, 1382 (1982) ("The governing legal proposition is that once a verdict has been rendered, accepted by the court, and judgment entered thereon, and the jury has separated, the court has lost control of the verdict, and the only remedies are either mistrial or some variety of post-trial relief * * *."); *Kreiser v. People*, 199 Colo 20, 604 P2d 27, 29 (1979) ("[O]nce the jurors have separated and departed from the courtroom and from the control of the judge, with the opportunity to mingle and discuss the case with others, whether discussion be had or not, the jury's functions are at an end."); *State v. Edwards*, 15 Wash App 848, 552 P2d 1095, 1097 (1976) ("A discharge will occur in fact when a jury is permitted to pass from the sterility of the court's control and allowed to separate or disperse and mingle with outsiders. * * *

received, and the jury dispersed, the court is foreclosed from any action regarding the verdict, except mistrial or some other post-trial motion. *See Davis*, 433 NE2d at 1382 (holding that in criminal case where trial court had received jury's verdict and allowed the jurors to separate, the court was "foreclosed from any action regarding the verdict"). For the reasons below, we adopt that rule here.

We believe that rule is reasonable because it, like the polling procedure, preserves the integrity of the jury process by ensuring that "a jury's verdict' * * * [is] based upon the evidence developed at trial.'" *Turner v. Louisiana*, 379 US 466, 472, 85 S Ct 546, 13 L Ed 2d 424 (1965) (internal citations omitted). Where a jury has left the court's control and been subjected to outside influences, the reliability of any poll on recall, as well as the integrity of the resulting verdict, is undermined by the possibility, however remote, that the recalled juror was affected by improper influences. *Marinari*, 32 F3d at 1213-14. That possibility unduly weakens the integrity of the jury process, and the rule outlined above safeguards the system from having to bear that strain.

Whether a trial court has "lost control" of the jury is not an inquiry answered by any particular word or ministerial act. It is a determination as to whether the jury has dispersed after rendering its verdict. *Id.* at 1214. Here, there is no question that the jury had dispersed. After receiving the verdicts, the court told the jurors that "jury service is over" and allowed them to leave the courtroom. That, in turn, permitted them to discuss openly the case with anyone. Furthermore, the court could not locate Marquez for three weeks. The court's loss of control over the jury foreclosed it from reviewing the verdict. The court abused its discretion in recalling Marquez in an attempt to correct the verdict and, thus, erred in denying the motion for mistrial of defendants Vann, Smith and Lewis.[5]

---

[C]ontamination is presumed * * *."); *People v. DeStefano*, 64 Ill App 2d 389, 212 NE2d 357, 367 (1965), *cert den* 385 US 821 (1966) (court could not correct verdict because it had "'lost control' of the jury before [it] discovered that a misunderstanding had occurred which caused the discharge of the jury[ ]").

[5] Because defendants Vann, Smith and Lewis request only a new trial, we express no opinion as to other remedies, if any, that may be available to them on remand.

In defendants' second assignment of error, defendant Clark[6] challenges the constitutionality of ORS 137.700, popularly known as Measure 11. The arguments have been rejected. *State ex rel Huddleston v. Sawyer*, 324 Or 597, 932 P2d 1145 (1997), *cert den* ___ US ___ , 118 S Ct 557 (1997).

Convictions of robbery in the second degree as to defendants Vann, Lewis and Smith reversed and remanded; otherwise affirmed.

---

[6] Given our disposition on defendants' first assignment of error, this assignment of error is rendered irrelevant to defendants Vann, Lewis and Smith.