Argued and submitted April 24, 2001, affirmed February 20, 2002

STATE OF OREGON,
*Respondent,*

*v.*

JAMES DANIEL VOGH,
*Appellant.*

000140180; A109942

41 P3d 421

Garrett A. Richardson argued the cause and filed the brief for appellant.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

## LINDER, J.

Defendant appeals his conviction of criminal trespass in the second degree. ORS 164.245. We write to address only defendant's assignment of error regarding the trial court's failure to administer the jury oath. We affirm.

The relevant facts are procedural in nature and are undisputed. The case was tried to a jury on March 21, 2000. The jury returned a guilty verdict, which the trial court received without objection. The jury was discharged the same day. The case came before the trial court for sentencing on March 28, 2000. At sentencing, defense counsel stated that he had "thought about it after trial" and he had a "suspicion" that "the court never swore the jury on this case." Although the trial judge could not recall whether the jury was sworn, the clerk said that she remembered swearing the jury. In light of that uncertainty, the trial judge rescheduled sentencing for the following week. At the scheduled sentencing hearing, defense counsel reported that he had obtained and reviewed the audiotape transcript of the trial and that it did not disclose that the jury had been sworn.[1]

Defense counsel suggested that either "a new trial be ordered [or] that the jury that actually heard the case be reassembled and sworn and sent back to deliberate a second time." The court declined to do either. Defense counsel then moved for a mistrial, relying on *State v. Barone*, 329 Or 210, 986 P2d 5 (1999), *cert den* 528 US 1086 (2000). The trial court denied that motion as untimely, and sentenced defendant.

On appeal, defendant asserts that the trial court "erred by failing to swear the jury." Defendant's assignment of error is not directed at a particular ruling, contrary to what our rules require.[2] Defendant's argument and the portions of the record that he sets forth, however, reveal that the trial court made three distinct rulings with which he takes issue. Defendant does not discuss those rulings separately but,

---

[1] Because the audiotape failed to reveal whether the jury had been sworn, the trial court proceeded on the assumption that it had not been. We do the same.

[2] *See* ORAP 5.45(3) ("Each assignment of error shall identify precisely the legal, procedural, factual, or other *ruling* that is being challenged.") (emphasis added).

rather, addresses them as though each is subject to the same analysis. Defendant's generic assignment of error and his approach to the trial court's rulings are, ultimately, telling. Correctly and precisely framed, defendant's arguments encompass three claims of error: (1) the trial court erred in failing to grant a new trial *sua sponte*; (2) the trial court erred in denying defendant's request to reassemble the jury and administer the oath to it two weeks after it had returned its verdict and had been released from the court's control; and (3) the trial court erred in denying defendant's motion for mistrial based on the court's refusal to grant a new trial or its refusal to reassemble the jury and administer the oath after it had dispersed. As those correct framings of defendant's assignments of error suggest, and as our discussion below explains, defendant failed to raise his claim below in a timely fashion.

■ We begin with defendant's argument that the trial court should have granted a new trial based on its failure to swear the jury at the outset of the trial. ORS 136.535 provides that a motion for a new trial "shall be filed within five days after the filing of the judgment sought to be set aside." The only point at which defendant suggested that the trial court should order a new trial, without formally making a motion to that effect, was before sentencing and before the judgment was filed. The trial court commented that the issue was premature. Defense counsel agreed, stating: "There's not a motion for new trial before the Court in this context because one hasn't been filed yet because a judgment hasn't been entered." On that record, any request defendant may have made for a new trial was effectively withdrawn. Defendant did not file a motion for new trial after the judgment was entered. Under the circumstances, the trial court's failure to grant a new trial, effectively *sua sponte*, was not error.

■ Defendant also argues that the trial court should have reassembled the jury, administered the oath to it, and asked it to deliberate anew. In urging the trial court to take that action, defendant relied on *Barone*, in which the trial court administered the oath to the jury immediately after it returned its verdict and then directed the jury to redeliberate. 329 Or at 215. The posture of this case, however, differs significantly from that of *Barone*. Here, the jury had returned

its verdict, the trial court had received the verdict without objection, the court had released the jury from its control, and the jury had dispersed. Seven days then passed. For the first time at sentencing, defendant raised his concern that the trial court may have failed to swear the jury. Approximately seven more days passed while defendant obtained and reviewed the audiotape record of the proceedings. Only then did defendant ask to have the jury reassembled so that it could be sworn and could deliberate anew.

Defendant makes no effort to demonstrate that the trial court had the authority to grant him such relief at that point. Nor does defendant discuss how that relief would have been meaningful. *State v. Vann*, 158 Or App 65, 973 P2d 354 (1999), is closely analogous in that regard. There, the day after the trial court received the verdict and discharged the jury, the trial court discovered that one juror had not returned a written polling slip. To confirm that the requisite number of jurors voted for the verdict, the trial court recalled that juror. This court held that the trial court could not cure the irregularity in that way. We reasoned:

> "Where a jury has left the court's control and been subjected to outside influences, the reliability of any poll on recall, as well as the integrity of the resulting verdict, is undermined by the possibility, however remote, that the recalled juror was affected by improper influences. * * * That possibility unduly weakens the integrity of the jury process, and the rule [foreclosing any action regarding the verdict once it has been received and the jury has dispersed] safeguards the system from having to bear that strain."

*Id.* at 74 (citations omitted).

Defendant's request that the trial court reassemble the jury, administer the oath, and have the jury deliberate anew asked the trial court to do something that it lacked the power to do. No statute gives a trial court the authority to reassemble a jury after it has been discharged from the court's control. Nor is there a basis for concluding that the court inherently has that power. As *Vann* observes, such a remedy comes too late in the day and injects new uncertainties into the reliability of any verdict the jury might return. To be sure, when the verdict is adverse to the defendant, as it

was here, the defendant has nothing to lose by seeking a new verdict, however lacking that verdict may be in integrity. But a defendant is not entitled to insist on an unreliable verdict. Defendant's requested relief came too late, and the trial court correctly declined to grant it.[3]

■ The next issue is whether the trial court correctly denied defendant's motion for mistrial. Defendant moved for a mistrial only after the trial court declined defendant's alternative requests to order a new trial or to reassemble the jury. Thus defendant made that motion, too, after the verdict had been accepted and the jury had been discharged.

Defendant argues that, under *Barone*, if a trial court fails to administer the oath to the jury at the outset of the trial as ORCP 57 E requires, it must at least swear the jury later in the proceedings or, if it does not, it must grant a defendant a mistrial. *Barone* does not stand for that broad proposition, however. There, the court stated that, if the failure to swear the jury in a timely manner "results in unfair prejudice or affects a substantial right of a party, the trial court is without discretion to deny a motion for mistrial." *Barone*, 329 Or at 225. The court did not hold that a failure to swear the jury at all necessarily amounts to unfair prejudice or infringes a substantial right of a party. To the contrary, the court treated even an untimely administration of the oath as error and refused to analyze it as "structural error," that is, an error requiring automatic reversal. *Id.* at 226. *Barone* did not involve, and thus the court did not consider, whether a failure to administer the oath at all is *per se* prejudicial and requires granting a motion for mistrial as a matter of law.

■■ More to the point, however, *Barone* involved a timely motion for mistrial, that is, one made before the jury

---

[3] Defendant does not dispute that the jury had been released from the court's control and had dispersed. At oral argument, however, defendant for the first time raised an issue as to whether the jury had been technically "discharged" pursuant to ORCP 59 G(5). We decline to consider that assertion because it was not raised below and was not, for that matter, briefed on appeal. In all events, however, it is worth noting that *Vann*'s concern with the integrity of the jury's verdict does not turn on compliance with the technical procedures of ORCP 59 G(5). Rather, the court's concern was premised on the practical reality that once jurors are released from the court's control and are allowed to leave the courtroom, they may "discuss openly the case with anyone," thereby tainting any future deliberations. *Vann*, 158 Or App at 74.

returned its verdict. *Barone* contains no suggestion that a defendant is entitled to a mistrial when the defendant first alerts the trial court to its failure to swear the jury after the verdict has been accepted and after the jury has been released. A motion for mistrial at that late stage is untimely. As the Oregon Supreme Court has held, "the only post-verdict motions authorized by statute in criminal cases are a motion for a new trial and a motion in arrest of judgment." *State v. Peekema*, 328 Or 342, 347, 976 P2d 1128 (1999); *see also State v. Metcalfe*, 328 Or 309, 313-14, 974 P2d 1189 (1999). In all events, we review a trial court's denial of a motion for mistrial for abuse of discretion. *State v. Lotches*, 331 Or 455, 496, 17 P3d 1045 (2000). When, as here, a defendant does not call the matter to the trial court's attention until after it is too late for the trial court to take corrective action, and defendant offers no explanation for why the issue was not or could not have been raised earlier, a denial of a motion for mistrial is not error.

At least in passing, defendant makes one additional argument that we address. He asserts that a failure to swear the jury in a criminal case qualifies as "structural error" because it "deprive[s a] defendant of the substantial right to a trial by an impartial jury." Defendant does not develop the argument or offer any principled analysis to support it. Nor does the state assist us by responding to the point. We reach the argument, however, because defendant's claim is, in effect, that a verdict by an unsworn jury is a nullity and therefore is void. If defendant were correct in that regard, the issue would be one that he could raise at any time, including for the first time on appeal. *See generally Ketcham v. Selles*, 304 Or 529, 534, 748 P2d 67 (1987) (void judgment may be challenged at any time, including collaterally; challenge to voidable judgment must be timely); *Goodwin v. State of Oregon*, 125 Or App 359, 363, 866 P2d 466 (1993), *rev den* 319 Or 80 (1994) (defect, even one of constitutional dimensions, that renders conviction voidable rather than void must be properly preserved).

No Oregon case is directly on point. As already discussed, *Barone* involved an untimely swearing of a jury in a criminal case, not a complete failure to do so. As for authority in other jurisdictions, some sources suggest that the case law holds uniformly that a criminal verdict from an unsworn jury

is a nullity.[4] Our review, however, reveals that the authority is divided and that no particular consensus exists.

Specifically, many of the cases that state that a verdict by an unsworn jury is a nullity do so by way of *dicta*.[5] Of the relatively few cases that so hold in an authoritative way, the bulk are dated and reach that result based on the formalistic view that, until sworn, the jury is not "lawfully constituted" and cannot render a legal verdict. *E.g., State v. Mitchell*, 199 Mo 105, 108, 97 SW 561 (1906).[6] Initially, that same formalistic approach led to early decisions holding that an untimely administration of the oath could not cure the problem, because a jury had no power to hear evidence until sworn and, thus, all proceedings before administration of the oath were themselves a nullity. *See, e.g., Miller v. State*, 122 Miss 19, 38, 84 So 161 (1920). Likewise, early cases held that the oath had to be administered to the specific panel drawn to try the particular case; it was not enough that the entire jury pool had been sworn before the jury was selected. *See, e.g., Howard v. State*, 80 Tex Crim 588, 592, 192 SW 770 (1917).

---

[4] *See generally* 47 Am Jur 2d 897, *Jury*, § 217 (1995); 50A CJS 545, *Juries*, § 496 (1997).

[5] Many of the cases cited for the rule actually involved untimely administrations of an oath, which the courts considered harmless or otherwise not a ground for reversal. In the course of their discussions, they observed that a complete failure to swear the jury would render the verdict a nullity, but in fact that issue was not before them and they did not dispose of the case on that basis. *See, e.g., State v. Godfrey*, 136 Ariz 471, 666 P2d 1080 (Ariz Ct App 1983); *State v. Frazier*, 339 Mo 966, 98 SW2d 707 (1936). Others involved reversals based on the trial court's failure to follow available statutory procedures to administer the verdict later in the proceeding. *Steele v. State*, 446 NE2d 353 (Ind Ct App 1983). Still others involved observations made after the trial court discovered that the jury had not been sworn and on its own motion granted a mistrial. *People v. Pribble*, 72 Mich App 219, 225, 249 NW2d 363, 366 (1976).

Moreover, to the extent that *dicta* counts in this regard, *dicta* in Oregon jurisprudence points in the opposite direction. *See State v. Walton*, 53 Or 557, 566, 101 P 389 (1909) (stating, in *dictum*, that failure to swear the jury in a criminal case would not render the subsequent trial "so far void" as to, for example, preclude perjury prosecution of witnesses who testify in such a proceeding).

[6] *See also People v. Pelton*, 116 Cal App Supp 789, 7 P2d 205 (1931) (there is no "legal jury" if the jury is not sworn); *Slaughter v. State*, 100 Ga 323, 28 SE 159 (1897) (a criminal trial to an unsworn jury "was, in effect, no more than a trial by mob"); *State v. Moore*, 57 W Va 146, 49 SE 1015 (1905) (for conviction to be legal, it is not enough to show that jury was "elected" according to law, but it also must have been sworn).

Much of that formalism has since given way to a more functional approach. For example, courts now appear uniformly to hold that the untimely administration of the oath is subject to both waiver and harmless error analysis. *See, e.g., Barone*, 329 Or at 225 (untimely oath).[7] Likewise, a substantial body of case law holds that other irregularities in the timing and administration of the oath are reversible error only if raised timely and if prejudicial to the defendant's interests.[8] Most importantly, in recent years, some courts have squarely rejected the proposition that a criminal verdict by an unsworn jury is a nullity, concluding instead that a complete failure to swear the jury is akin to other objections to the jury's competency or the impartiality of its deliberations, and likewise must be raised timely and must be prejudicial. *See, e.g., State v. Arellano*, 125 NM 709, 712, 965 P2d 293 (1998); *Sides v. State*, 693 NE2d 1310, 1312 (Ind 1998); *see also United States v. Pinero*, 948 F2d 698, 700 (11th Cir 1991) (per curiam) (questioning the existence of a requirement to swear the jury in criminal cases tried in federal courts).

Thus, in determining what the rule should be in Oregon, we have neither direct precedent in our own jurisprudence nor a clear consensus among other jurisdictions to guide us. Logic and principle, however, lead us to reject defendant's suggestion that a criminal verdict rendered by an

---

[7] *See, e.g., Cooper v. Campbell*, 597 F2d 628 (8th Cir 1979); *People v. Clouse*, 859 P2d 228 (Colo App 1992); *White v. State*, 629 SW2d 701, 704 (Tex Crim App 1981), *cert den* 456 US 938 (1982).

[8] *See, e.g., United States v. Martin*, 740 F2d 1352 (6th Cir 1984) (even though better practice was to swear jurors following *voir dire* in each particular case, defendant's rights were not violated by procedure of swearing jury panel en masse on first day of their terms); *Mathis v. State*, 45 Fla 46, 34 So 287 (1903) (no reversible error in failing to postpone swearing of jurors until entire panel was obtained, although better practice was to the contrary); *Bocanegra v. State*, 303 So2d 429 (Fla Dist Ct App 1974) (not reversible error to swear jurors individually rather than as a complete jury, even though it was not the better practice); *State v. Healy*, 521 NW2d 47 (Minn Ct App 1994) (no reversible error where record established that jury pool was sworn, even if oath was not administered again after jurors were drawn to try particular case); *State v. Smith*, 268 NC 659, 151 SE2d 596 (1966) (although common law required jurors to be sworn to try the particular cause, statute could authorize alternative procedure of providing for a general oath to jurors at the opening of a court term); *Strickland v. City of Friona*, 294 SW2d 254 (Tex App 1956) (jurors should have been sworn before *voir dire*, but reversal was not required where matter was not timely raised).

unsworn jury is a nullity and therefore can be challenged at any time, including after judgment.

The most logical rationale for reaching such a conclusion would be the formalistic one reflected in the older cases—*i.e.*, that the jury's oath has a transforming effect on the venire and is the official act that vests the panel members with the necessary authority to be lawful jurors. That approach, however, was implicitly rejected in Oregon more than a century ago. In *Griffin v. Pitman*, 8 Or 342, 344 (1880), the Oregon Supreme Court held that, when a court fails to swear the jury and "either party, being present and aware of that fact, remains silent and takes the chances of a verdict in his favor, he will not be permitted to question the validity of it, if the verdict should prove unfavorable." Accordingly, unless a party raises the issue to the trial court, it waives the objection and the verdict is given full effect. To be sure, *Griffin* was a civil case. But the formalities for impaneling and swearing juries are, and traditionally have been, the same for civil and criminal cases. *See* ORS 10.010(3); ORCP 57 E.[9] *Griffin*'s implicit rejection of the view that an unsworn jury lacks all authority to act, rendering an otherwise proper verdict a nullity, logically has the same force in criminal as in civil cases.

Moreover, if the problem were one of the jury's authority to hold office and act without first swearing an oath, the issue then would be analogous to cases involving irregularity in a judge's authority to preside over a case. In that regard, the long-standing rule in Oregon is that a *de facto* judge's authority to act cannot be attacked after judgment or otherwise collaterally.[10] As declared in *State v.*

---

[9] ORS 10.010(3), which applies to civil and criminal juries alike, defines a jury as "a body of persons temporarily selected from persons who live in a particular county or district, and invested with power to present or indict in respect to a crime or to try a question of fact." ORCP 57 E, in turn, which we earlier discussed and which applies to criminal cases as well as civil ones, requires the jury to be sworn after it has been selected from the general pool of potential jurors. Those provisions reflect the traditional requirements of Oregon law. *See* General Laws of Oregon, ch 2, § 193, p 187 and ch 15, § 152, p 466 (Deady 1845-1864) (juries in civil and criminal cases to be sworn "[a]s soon as the number of the jury has been completed").

[10] A *de facto* official is one who "has the possession of an office and performs the duties thereof under color of right, without being actually qualified in law so to act." *Smith v. Jefferson*, 75 Or 179, 187, 146 P 809 (1915).

*Holman*, 73 Or 18, 26-27, 144 P 429 (1914), when a *de facto* judge has heard and determined a cause,

> "all orders, judgments and decrees made, given and rendered by him therein are conclusive, valid and binding upon all parties, unless his authority in such matters was duly challenged before any determination was reached therein. \* \* \* A party cannot be permitted to wait until an adverse judgment or decree is rendered against him and then claim that the judge before whom his cause was tried was powerless to determine the issues involved. \* \* \* Without [a timely] objection the power to hear and determine all causes tried in a *de facto* court by a *de facto* judge must, for the sake of peace, the promotion of the interests of parties litigant, and of the welfare of society be conceded to be valid."

*See also State ex rel Madden v. Crawford*, 207 Or 76, 90, 295 P2d 174 (1956) (although statute authorizing circuit judges to sit pro tempore as Supreme Court judges was unconstitutional, acts performed by judges sitting in that capacity were not nullities); *Anderson ex rel Poe v. Gladden*, 205 Or 538, 544, 288 P2d 823 (1955) (where *de facto* judge's authority had not been challenged at the defendant's trial, it could not be challenged on collateral attack). Here, by not raising an objection until after the jury had returned its verdict and had been discharged, defendant brought the equivalent of a collateral attack on the jury's authority to act in the matter. Under the cases cited above, that challenge simply came too late.[11]

 In arguing to the contrary, defendant urges only that, in criminal cases, the complete failure to swear the jury implicates the defendant's constitutional right to a fair trial by an impartial jury. *See Barone*, 329 Or at 226. But that same right is implicated by any number of other objections that do not qualify as "structural error." Rather, as a rule, a defendant must timely raise and preserve a claim that some aspect of the trial violated his right to a fair trial by an impartial jury. *See generally State v. Thompson*, 328 Or 248, 273 n

---

[11] Nor can a failure to swear the jury somehow be characterized as a jurisdictional flaw. Jurisdiction in a criminal case attaches as a result of the issuance of the indictment or information. *See generally State v. Terry*, 333 Or 163, 37 P3d 157 (2001).

18, 971 P2d 879 (1999); *State v. Amini*, 154 Or App 589, 593, 963 P2d 65 (1998), *rev'd on other grounds* 331 Or 384, 15 P3d 541 (2000). Moreover, to be entitled to relief on such a claim, the objectionable procedure must actually be prejudicial to the defendant's interests. *Thompson*, 328 Or at 271. Thus, in cases of actual misconduct, in which a juror engages in deliberations that in some way violates his or her oath, "the verdict will stand unless the evidence clearly establishes that the misconduct constitutes a serious violation of the juror's duty and deprives complainant of a fair trial." *State v. Gardner*, 230 Or 569, 575, 371 P2d 558 (1962). Whether the misconduct rises to such a level depends on the nature of the conduct considered in the context of the trial proceedings as a whole, including the instructions given to the jury to channel its deliberations. *See State v. Miller*, 167 Or App 72, 1 P3d 1047, *rev den* 330 Or 553 (2000) (juror misconduct, to justify setting aside a verdict, must meet a threshold level and must be considered along with court's instructions to the jury). The same is true of related claims, such as those involving a juror's actual eligibility and qualifications to serve as a juror. A defendant must raise an objection to the juror's competency or eligibility in a timely way and cannot, instead, do so only after gambling on a favorable jury verdict. *State v. Simonsen*, 329 Or 288, 294-95, 986 P2d 566 (1999).

We can conceive of no reason to treat a failure to administer the oath to the jury as more fundamental in nature—and thus, "structural"—than the jurors' actual performance of their duties in conformance with that oath, or the jurors' eligibility or competence to be jurors. In so observing we do not denigrate the significance of the jury's oath or its value in "vindicat[ing] a defendant's fundamental constitutional rights to a fair trial before an impartial jury." *Barone*, 329 Or at 226. But neither do we elevate it above the other aspects of our trial procedures that serve the same ends. The absence of the oath does not mean—at least not in any necessary way—that the defendant was unfairly tried. The oath does not stand alone as the sole procedure that guarantees that the jury will try the case based on the admissible evidence and the applicable law. To the contrary, numerous additional mechanisms serve the same purpose, including

but not limited to *voir dire*, peremptory juror challenges, precautionary instructions channeling the jury's deliberations, the vigilance of an unbiased trial judge, and representation by competent counsel.[12]

Consequently, we conclude that defendant's claim in this case should be held to the same standard that is applied to other "fair trial" objections, in particular those involving the qualifications of the jurors and the fairness or integrity of

---

[12] This case proves the point. After the six jurors were impaneled, and before any evidence was received, the trial court instructed the jurors as follows:

"The law that applies in this case will be given to you in part in these precautionary instructions. After you have heard the evidence and the arguments of the attorneys, I will give you further instructions regarding the legal rules you must follow in deciding this case.

"Your duty is to decide the facts from the evidence. You and you alone are the judges of the facts. You will hear the evidence, decide the facts and then apply those facts to the law I will give you.

"* * * * *

"From time to time an attorney may make on objection to evidence. I will decide whether or not it is proper under the law for you to consider such evidence. Do not speculate about why an objection was made or about why I ruled as I did.

"* * * * *

"The fact that a criminal charge has been charged against the defendant is not evidence. The defendant is innocent of any crime unless and until the state proves the defendant's guilt beyond a reasonable doubt.

"To be an effective juror, you must not be influenced in any degree by personal feeling or sympathy for or prejudice against any party in this case. You must not interpret any statement, ruling or remark I make during this trial as any indication that I have formed any opinion about the facts or outcome of this case. You and you alone are to decide the facts. You must decide how believable the evidence is and what weight or value you will give that evidence.

"* * * * *

"Do not discuss this case during the trial with anyone, including any of the attorneys, parties, witnesses, your friends or members of your family. Do not discuss this case with other jurors until you begin your deliberations at the end of the case. Do not attempt to decide the case until you begin your deliberations.

"Ignore any attempt at improper communication. If any person tries to talk with you, tell them you can't, that you're a juror. And if they persist, just walk away from them and tell [the clerk], so she can bring it to my attention.

"Do not make any independent, personal investigation of any facts or locations connected with this case. Do not look up any information from any source. Do not communicate any private or special knowledge about any of the facts of this particular case to your fellow jurors. Decide the case only on the evidence received here in court."

the jury's deliberations. In the absence of a timely objection, the failure to administer an oath to the jury, without any other showing of juror misconduct or prejudice, will not serve as a ground for overturning an otherwise lawful verdict. A defendant may not obtain an automatic reversal of a conviction by raising an objection to the court's failure to swear the jury only after an adverse judgment has been returned and the jury has been discharged. Instead, such an objection, like others that also seek to ensure defendant's fair trial interests, must be raised timely, and prejudice must be shown, for a defendant to be entitled to relief.[13]

Affirmed.

---

[13] Defendant also raises a constitutional double jeopardy argument, urging that the failure to swear the jury means that he may be twice tried for the same offense. *See* ORS 131.505(5)(b) (jeopardy attaches when jury is empaneled and sworn). Defendant did not raise a double jeopardy argument below and cannot do so for the first time on appeal. *See, e.g., State v. Talbert*, 153 Or App 594, 600, 958 P2d 902 (1998) (mere citation to Article I, section 12, did not preserve double jeopardy claim); *State v. Riggs*, 143 Or App 427, 431, 923 P2d 683 (1996), *rev den* 325 Or 247 (1997) (same). Moreover, although defendant mentions the point on appeal, he does not offer any analysis to support his position. *See generally State v. Mendez*, 308 Or 9, 19, 774 P2d 1082 (1989) (court would not consider constitutional claim not raised below or developed on appeal). In particular, defendant makes no effort to explain why, given our conclusion that the verdict is valid, jeopardy constitutionally would not *terminate* based on that valid verdict and why the earliest point at which jeopardy *attaches* would not be the point at which the jury is empaneled and assumes its *de facto* status, or at a minimum, when the first witness is sworn, as in a bench trial.