FILED

**June 14, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 21-0114 – *State of West Virginia v. Quenton A. Sheffield*

Wooton, Justice, concurring:

I concur in the Court's judgment, in the entirety of its well-reasoned opinion, and in its two new syllabus points. I agree that a violation of Rule 24(c) of the West Virginia Rules of Criminal Procedure is subject to harmless error analysis because the rule is not constitutionally grounded; that as part and parcel of such analysis, there is a presumption of prejudice to the defendant/petitioner that the State must overcome; and that under the facts and circumstances of this case, the State failed to overcome that presumption. I write separately, however, to express my view that the circuit court's failure to swear the recalled alternate juror before sending her into the jury room to deliberate was fundamental, structural error that in and of itself rendered the petitioner's conviction invalid. *See State v. Moore*, 57 W. Va. 146, 49 S.E. 1015 (1905), *overruled on other grounds by State v. Grimmer*, 162 W. Va. 588, 589, 251 S.E.2d 780, 782 (1979):

> It is hardly necessary to cite authorities to show that a person cannot be legally convicted unless the record shows that the jury which tried the case were sworn according to law. It is not necessary that the oath should be copied into the order, but the record must affirmatively show somewhere and in some way that the jury were sworn in the manner prescribed by law, before there can be a legal conviction.

*Moore*, 57 W. Va. at 146, 49 S.E. at 1016.

Although the State acknowledges the rule established in *Moore*, it relies on an Oregon case, *State v. Vogh*, 41 P.3d 421 (Or.Ct.App. 2002), for the proposition that the

1

rule requiring a jury to be sworn is "legal formalism" which "has since given way to a more functional approach." *Id.*, 41 P.3d at 426. I find *Vogh* to be unpersuasive for several reasons. First, most if not all of the court's discussion is dicta, as the case was decided on the basis of the defendant's procedural default in failing to raise the issue in a motion for new trial. *Id.* at 423. Second, the court recognized the distinction between cases involving untimely swearing of the jury and cases involving failure to swear the jury at all, noting that the only Oregon case on point[1] involved the former. *Id.* at 425. As to the latter, the court acknowledged that the *Moore* rule is not an outlier, concluding "that the authority is divided and that no particular consensus exists." *Id.* at 425. Third, I wholeheartedly disagree with the court's conclusion in *Vogh* that the failure to swear the jury in a criminal case, which is part and parcel of constitutional "fair trial" provisions, is subject to a harmless error analysis less rigorous than that articulated by this Court in numerous decisions:

> "We have long held that '[e]rrors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction." Syl. pt. 20, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974). *See also* W. Va. R.Crim. P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."). Further, "[f]ailure to observe a constitutional right constitutes a reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. pt. 5, *State ex rel. Grob v. Blair,* 158 W.Va. 647, 214 S.E.2d 330 (1975).

---

[1] *State v. Barone*, 986 P.2d 5 (Or. 1999).

*State v. DeWeese*, 213 W. Va. 339, 352, 582 S.E.2d 786, 799 (2003); *see also State v. Flack*, 232 W. Va. 708, 716, 753 S.E.2d 761, 769 (2013) ("We made clear in Syllabus Point 3 of *Frazier* [*State v. Frazier*, 229 W. Va. 724, 735 S.E.2d 727 (2012)] that '[i]n a criminal case, the burden is upon the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'").

In my view, the failure to swear the dismissed-and-subsequently-recalled alternate juror in the instant case deprived the petitioner of his guaranteed right to a trial "by a jury of twelve[,]" W. Va. Const. art. III, § 14,[2] in that only eleven members of the panel had taken the required oath as jurors. In that regard, the record is clear that the petitioner never agreed, either orally or in writing,[3] to be tried by fewer than twelve jurors. The circuit court presented the petitioner with a classic Hobson's choice: if he did not agree to have his guilt or innocence decided by an eleven-person jury, the recalled juror would participate in deliberations. Although the petitioner chose the latter option, it is clear from the record that this was not a true choice in that it was not made knowingly, intelligently,

---

[2] Although the text of article three, section fourteen of the West Virginia Constitution provides for a jury of twelve *men*, the WEST VIRGINIA JURY SERVICE FOR WOMEN AMENDMENT, AMENDMENT 1, was approved by the voters on November 6, 1956, making women eligible for jury service.

[3] *See* W. Va. R. Crim. P. 23(b) (providing that "[j]uries shall be of 12[]" unless the parties "stipulate *in writing* with the approval of the court, that the jury shall consist of any number less than 12[.]") (emphasis added).

and voluntarily. *See State v. Redden*, 199 W. Va. 660, 487 S.E.2d 318 (1997), where this

Court held that

> "'Certain constitutional rights are so inherently personal and so tied to fundamental concepts of justice that their surrender by anyone other than the accused acting voluntarily, knowingly, and intelligently would call into question the fairness of a criminal trial.' Syllabus Point 5, *State v. Neuman,* 179 W.Va. 580, 371 S.E.2d 77 (1988)."

*Id*. at 661, 487 S.E.2d at 319, Syl. Pt. 2. Thus, the petitioner cannot reasonably be held to

have waived his constitutional rights under article three, section fourteen of the West

Virginia Constitution.

> "I do not necessarily dispute the contention that 'the fact that the jury at common law was composed of 12 is a historical accident, unnecessary to effect the purposes of the jury system and wholly without significance 'except to mystics' . . . Yet, under the West Virginia Constitution twelve is indeed the 'magic number' . . . and this Court should be loath to tinker with such a stable and predictable fixture of our criminal jurisprudence."

*State v. Lightner*, 205 W. Va. 657, 665, 520 S.E.2d 654, 662 (1999) (McGraw, J.,

dissenting) (citations omitted).

Finally, I reject the State's argument that because the recalled juror had been

sworn earlier, her oath somehow "carried over" despite the fact that she had been excused

by the circuit court. The State cites *U.S. v. Turrietta*, 696 F.3d 972 (10th Cir. 2012) as

support for its position – yet another case in which the court's entire discussion of jurors'

4

oaths is dicta,[4] as the case was decided on the basis of the defendant's procedural default: defense counsel had deliberately waited until after the verdict was in and the jury discharged to complain that the jury hadn't been sworn, leading the court to observe that "[t]he interests of justice are generally not served by allowing a party to object to an error after the trial has concluded and the party has lost." *Id*. at 985-86. More significantly, however, *Turrietta* has nothing whatsoever to do with whether a juror's oath somehow "carries over" after his or her discharge, and the State has cited no authority for this extraordinary proposition. One can only wonder where the State would have this Court

---

[4] Interestingly, much of the dicta supports the proposition that jurors' oaths are critical to their ability to perform the task assigned to them: to well and truly try the case.

> Although we do not resolve the issue here, we can readily perceive a difference, in terms of this central function, between a sworn and an unsworn jury. Sworn jurors stand before a judge with uplifted hands and recite an oath designed to impress a duty on their conscience. They promise to carry out their charge—to render a verdict in accordance with the evidence—conscientiously and impartially, based on the court's instructions on the law. Whether swearing an oath makes jurors more reliable factfinders is a question we are unequipped to answer, but the principle behind the exercise is sound: A juror impressed with the seriousness of his charge is more likely to be attentive at trial and, in turn, more likely to carry out his duty faithfully, with due respect for the ideals underlying the criminal process. *See United States v. Martin,* 740 F.2d 1352, 1358 (6th Cir.1984) ("Swearing the jury ... serves to emphasize the importance and seriousness of the juror's task...."). In this sense, it is fair to presume the oath furthers the fair resolution of factual issues.

*Turrietta*, 696 F.2d at 978.

draw the line: does an oath "carry over" after discharge for an hour, a day, a week? Not surprisingly, the State avoids asking this critical question, let alone answering it.

For the reasons set forth herein, I respectfully concur.