Argued and submitted March 1, 2007; resubmitted en banc January 8, affirmed March 19, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

EDWIN LEE HAMMOND,
*Defendant-Appellant.*

Coos County Circuit Court
04CR0437; A131374

180 P3d 137

Jesse Wm. Barton argued the cause and filed the brief for appellant.

Kaye E. McDonald, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Wollheim, Schuman, Ortega, and Rosenblum, Judges, and Carson, Senior Judge.

HASELTON, J.

Edmonds, J., concurring in part, dissenting in part.

## HASELTON, J.

Defendant appeals a judgment revoking his probation. He first assigns error to the trial court's reliance on the results of a polygraph examination to determine that he had violated a condition of probation. Defendant also contends that the trial court erred in ordering that he not be considered for alternative sanctions under ORS 137.752(1) without articulating, on the record in open court, the reasons for that order. We conclude that the trial court did not err in considering the polygraph examination results and that defendant did not preserve for our review his claim of error pertaining to the court's failure to render findings pursuant to ORS 137.752(1). Accordingly, we affirm.

Previously, defendant pleaded guilty to two counts of encouraging child sexual abuse in the second degree and one count of assault in the fourth degree. The court imposed a term of probation. The conditions of his probation included, among other things, that defendant not possess or view sexually explicit materials, that he submit to polygraph examinations, and that he respond truthfully to his probation officer.

Pursuant to the conditions of his probation, defendant submitted to a routine polygraph examination, which, on that occasion, indicated that he failed to truthfully answer questions relating to "viewing x-rated material, accessing the [I]nternet, and entering adult sex industry establishments (bookstores, lingerie/modeling shops, paraphernalia shops)." In light of those results, the probation officer conducted a search of defendant's home. The search uncovered sexually explicit materials.

Based on the results of the search, the state sought to revoke defendant's probation. At the probation violation hearing, the court concluded that defendant had violated two conditions of his probation by (1) possessing sexually explicit materials and (2) failing to respond truthfully to his probation officer. The court based its conclusion that defendant had failed to respond truthfully to his probation officer on the polygraph examination results. In addition to the specific violations, the court concluded that the purposes of defendant's

probation were not being served. For those reasons, the court revoked defendant's probation.

The court then sentenced defendant to six months' imprisonment on each of the two convictions for encouraging child sexual abuse in the second degree and to 12 months' imprisonment on the fourth-degree assault conviction. The court committed defendant to the custody of the Department of Corrections for the encouraging child sexual abuse convictions and to the custody of the Coos County Jail for the assault conviction. All three sentences were ordered to run consecutively. The court also ordered that defendant not be considered for alternative sanctions, but it did not make any findings on the record supporting that order. Defendant did not at that time object to the lack of findings. The day after the court entered the judgment, however, defendant filed a motion asking the court to reconsider or clarify the denial of eligibility for alternative sanctions in light of the court's failure to make findings as required by ORS 137.750(1) and ORS 137.752(1). The court denied that motion without a hearing and without an explanation.

■■ As noted, defendant first assigns error to the trial court's reliance on polygraph examination evidence during the probation revocation hearing. We review a trial court's decision to revoke probation for an abuse of discretion. *State v. Perez*, 122 Or App 385, 388, 857 P2d 893 (1993). However, as we understand his argument, defendant raises a question of law, specifically, whether polygraph examination results are—as a matter of law—unreliable, and therefore not admissible in proceedings to revoke probation. Accordingly, we review that question for legal error.

To answer that question, we initially turn to the Oregon Evidence Code. The evidence code—with the exception of provisions that govern privileges—does not apply in proceedings to revoke probation. OEC 101(4)(e) provides:

"ORS 40.010 to 40.210 and 40.310 to 40.585 do not apply in the following situations:

"* * * * *

"(e) Proceedings to revoke probation, *except as required by ORS 137.090.*"

(Emphasis added.)

In turn, ORS 137.090—relating to sentencing—provides, in part:

"(1) In determining aggravation or mitigation, the court shall consider:

"(a) Any evidence received during the proceeding;

"(b) The presentence report, where one is available; and

"(c) Any other evidence relevant to aggravation or mitigation that *the court finds trustworthy and reliable.*"

(Emphasis added.)

Here, the parties' arguments follow the same statutory path; that is, they start with the general proposition, stated in OEC 101(4)(e), that the evidence code does not apply in proceedings to revoke probation. The parties then turn to ORS 137.090 to determine whether the trial court erred in relying on the polygraph examination evidence in this case. Specifically, defendant argues that the court erred in considering the polygraph examination evidence, because the court may consider only evidence that is "trustworthy and reliable," pursuant to ORS 137.090(1)(c), and, according to defendant, polygraph examinations are "inherent[ly] unreliabl[e]."[1] The state responds that, pursuant to ORS 137.090(1)(c), "the trial court implicitly found [that] evidence that defendant had answered questions posed in the polygraph exam deceptively [was] trustworthy and reliable," and therefore the court did not err in considering that evidence.

■ The difficulty with the parties' reliance on ORS 137.090 is that, despite the "except as required" wording in OEC 101(4)(e), ORS 137.090 does not, on its face, address matters that are relevant in proceedings to revoke probation. ORS 137.090 refers to circumstances in which the court is

---

[1] Defendant also contends that the "trustworthy and reliable" language in ORS 137.090(1)(c) "is a codification of constitutional confrontation clause requirements" and that the phrase is "used as a shorthand description of the pre-*Crawford* confrontation clause test." However, defendant does not argue that consideration of the polygraph examination evidence violated his confrontation rights. Accordingly, we do not address that issue.

assessing "aggravation or mitigation." Those terms are more appropriately applicable to sentencing, as opposed to probation revocation. Yet, despite the seeming inapplicability of ORS 137.090 to considerations relevant at a probation violation hearing, the legislature explicitly included that cross-reference in OEC 101(4)(e). Accordingly, we must discern what the legislature intended by inclusion of the phrase "except as required by ORS 137.090" in OEC 101(4)(e). *See* ORS 174.010 (explaining that, when construing statutes, we are constrained "not to insert what has been omitted, or to omit what has been inserted"). Accordingly, we apply the familiar principles of statutory construction explained in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), beginning with the text in context and, if necessary, resorting to legislative history and maxims of statutory construction.

■ As discussed above, the extent to which the legislature intended ORS 137.090 to apply in the context of proceedings to revoke probation is not apparent from the text of OEC 101(4)(e), nor from its context. We thus consider legislative history. *PGE*, 317 Or at 611-12; *see also* ORS 174.020(3) (explaining that, in construing statutes, "[a] court shall give the weight to the legislative history that the court considers to be appropriate"). The Legislative Commentary to OEC 101(4)(e) provides:

> "A probation revocation proceeding consists of an adjudicatory and a dispositional phase. [OEC 101(4)(e)] does not mandate the application of the Oregon Evidence Code to either, although the Legislative Assembly recognizes that due process may require the application of certain rules in the adjudicatory phase. The dispositional phase of a revocation proceeding is conceptually no different from sentencing with respect to the presentation of aggravating or mitigating circumstances. Therefore, the limitations of ORS 137.090 should apply here."

Legislative Commentary to OEC 101, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 101.02, Art I-5-6 (5th ed 2007) (citations omitted); *see State v. McClure*, 298 Or 336, 344, 692 P2d 579 (1984) (explaining that the commentary to the Oregon Evidence Code is not an official part of the code, but it "provides highly useful background regarding each

rule and guidance to courts and attorneys in interpreting these rules"). The commentary sheds significant light on the legislative reference to ORS 137.090 in OEC 101(4)(e). It suggests that ORS 137.090 applies only to the "dispositional phase" of proceedings to revoke probation, where determining "aggravation or mitigation" are relevant considerations, and not to the "adjudicatory phase" of such proceedings.

■ Based on that understanding, ORS 137.090 has no bearing on the issue raised in this case. Here, the trial court relied on the polygraph examination results during the "adjudicatory phase" of defendant's probation revocation hearing. The court concluded, based on the polygraph examination results, that defendant had violated the condition of probation that required him to respond truthfully to his probation officer. The court stated, "I don't [know] of anything that prohibits me from using the polygraph exam as a condition that he's violated, and he's really supposed to answer things truthfully, so I would find that he violated [his probation]." That adjudicatory decision does not implicate the "aggravation or mitigation" considerations governed by ORS 137.090.[2] We conclude, therefore, that ORS 137.090 does not require application of the evidence code in the adjudicatory phase of a probation revocation hearing.

■ That conclusion means that the well-settled principle that polygraph examination evidence "shall not be admissible in any civil or criminal trial in this state or any other legal proceeding *subject to the rules of evidence under our Oregon Evidence Code," State v. Brown*, 297 Or 404, 445, 687 P2d 751 (1984) (footnote omitted; emphasis added), does not govern in this case. In *Brown*, the Supreme Court concluded that, although polygraph examination evidence may possess some probative value and relevance, under OEC 403, its probative value is far outweighed by the reasons for its exclusion. 297 Or at 442. However, the rule in *Brown* applies only to proceedings that are "subject to the rules of evidence under our Oregon Evidence Code." *Id.* at 445. As the Supreme Court

---

[2] The finding that defendant violated his probation permitted the trial court to proceed to the dispositional phase of the hearing, in which it could have decided to continue probation, modify the conditions of probation, or revoke probation and impose a term of incarceration on the convictions.

noted in *State v. Coffey*, 309 Or 342, 348, 788 P2d 424 (1990), "in proceedings to which the Oregon Evidence Code is not applicable, different considerations are relevant and a different analysis is required."

We turn to those "different considerations." In *Brown*, the Supreme Court explained that OEC 403 requires courts "to evaluate the degree to which the trier of fact may be overly impressed or prejudiced by a perhaps misplaced aura of reliability or validity of the evidence, thereby leading the trier of fact to abdicate its role of critical assessment." 297 Or at 439. The court determined that, because "[b]y its very nature the polygraph purports to measure truthfulness and deception," it was likely that a jury would place undue weight on polygraph examination evidence. *Id.* at 440-41. In *Coffey*, the court explained that, in *Brown*, it had "relied upon the rationale that the reasons for excluding polygraph evidence—including confusion of the issues, usurpation of the role of the jury, and potential for undue delay—substantially outweigh the probative value of the evidence." *Coffey*, 309 Or at 348. In *State v. Fink*, 79 Or App 590, 595, 720 P2d 372, *rev den*, 302 Or 36 (1986), we held that "a magistrate may properly consider the results of a polygraph examination in determining whether an unnamed informant is credible," explaining that "[t]he concerns militating against the use of polygraph evidence in criminal trials are not present in the context of a magistrate's decision whether to issue a search warrant." Similarly, in *Snow v. OSP*, 308 Or 259, 267-68, 780 P2d 215 (1989), the court suggested that polygraph examination results would be admissible in prison disciplinary proceedings.

Those cases reveal a clear rationale that is consistent with the trial court's action in this case. As in the context of affidavits supporting the issuance of search warrants and prison disciplinary hearings, the concerns that support the exclusion of polygraph examination evidence in trials do not apply to probation revocation hearings. Like those proceedings, probation revocation hearings are less formal than trials; they include a judge as the finder of fact, and the dangers of "unfair prejudice" addressed by OEC 403 are not present. Our statement in *Fink*, in the context of search warrant affidavits, applies equally here:

"The concerns militating against the use of polygraph evidence in criminal trials are not present in the context of a magistrate's decision whether to issue a search warrant. The magistrate is presumably aware of the controversy surrounding polygraphy and is hence less likely than a jury to be overwhelmed by the results of a polygraph test."

79 Or App at 595. We conclude that none of the considerations in *Brown* requires exclusion of polygraph examination evidence in probation revocation hearings.

■ As the foregoing discussion demonstrates, polygraph examination evidence is not—as a matter of law—inadmissible in probation revocation proceedings.[3] Accordingly, the trial court did not err in that regard. Because defendant does not argue that the trial court abused its discretion for any other reason, we conclude that the trial court did not err in revoking defendant's probation.

■ We turn to defendant's second assignment of error. The circumstances pertaining to that assignment of error are undisputed: In pronouncing sentence, the trial court stated that defendant would not be eligible for alternative sanctions but did not, as required by ORS 137.750(1) and ORS 137.752(1), find "on the record in open court substantial and compelling reasons to order that the defendant not be considered for alternative sanctions."[4] Defense counsel, who was

---

[3] We do not mean to suggest that the admissibility of evidence in such proceedings is entirely without limit. *Cf. Gagnon v. Scarpelli*, 411 US 778, 93 S Ct 1756, 36 L Ed 2d 656 (1973) (discussing the due process implications of probation revocation proceedings). Additionally, we acknowledge that there may be other reasons for the exclusion of polygraph evidence in proceedings to revoke probation. Here, we merely address the question before us—whether, as a matter of law, polygraph examination evidence is inadmissible in proceedings to revoke probation.

[4] ORS 137.750 provides, in part:

"(1) When a court sentences a defendant to a term of incarceration upon conviction of a crime, the court shall order on the record in open court as part of the sentence imposed that the defendant may be considered by the executing or releasing authority for any form of temporary leave from custody, reduction in sentence, work release, alternative incarceration program or program of conditional or supervised release authorized by law for which the defendant is otherwise eligible at the time of sentencing, unless the court finds on the record in open court substantial and compelling reasons to order that the defendant not be considered for such leave, release or programs."

ORS 137.752 provides, in part:

"(1) When a court commits a defendant to the custody of a supervisory authority of a county under ORS 137.124, the court shall order on the record in

present, did not object to that failure. Judgment was subsequently entered, stating that "[d]efendant * * * may not be considered for: leave, sentence reduction, release, or alternative program(s) or sanctions." Thereafter, and before filing a notice of appeal, defendant filed a motion under ORS 137.754 "to modify [the] judgment and sentence to comply with the requirements of ORS 137.570 or ORS 137.752."[5] The trial court denied that motion.

Defendant then appealed from the judgment. Defendant did not appeal separately from the post-judgment order denying relief under ORS 137.754.[6] Defendant's operative assignment of error states that the trial court erred in its "denial of eligibility for alternative sanctions."

Defendant contends that the trial court's asserted error in failing to render findings pursuant to ORS 137.750(1) and ORS 137.752(1) is reviewable as *preserved* error. Defendant does not contend, alternatively, that, in all events, the trial court's asserted noncompliance with ORS 137.750(1) and ORS 137.752(1) should be reviewed and corrected as error apparent on the face of the record. ORAP 5.45(1). Specifically, defendant does not argue that the matter in dispute satisfies the requisites of "plain error" as prescribed in *State v. Brown*, 310 Or 347, 355-56, 800 P2d 259

---

open court as part of the sentence imposed that the defendant may be considered by the supervisory authority for any form of alternative sanction authorized by ORS 423.478, unless the court finds on the record in open court substantial and compelling reasons to order that the defendant not be considered for alternative sanctions.

"(2) The supervisory authority may consider the defendant for alternative sanctions only upon order of the sentencing court appearing in the judgment."

[5] ORS 137.754 provides:

"Notwithstanding any other provision of law, a sentencing court retains authority after entry of a judgment of conviction to modify its judgment and sentence to comply with the requirements of ORS 137.750 or 137.752 when:

"(1) The judgment was entered on or after December 5, 1996;

"(2) The crime of conviction was committed on or after December 5, 1996; and

"(3) The judgment and sentence failed to comply with the provisions of ORS 137.750 or 137.752."

[6] Consequently, we are not faced with whether our analysis in *State v. Hart*, 188 Or App 650, 653, 72 P3d 671, *rev den*, 336 Or 126 (2003), pertaining to appeals from denial of relief under ORS 138.083(1), would similarly preclude an appeal from an order denying a motion to modify under ORS 137.754.

(1990), and that substantial considerations militate in favor of the affirmative exercise of the discretion under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-83, 823 P2d 956 (1991), to consider and correct such error.[7] *Accord State v. Soto-Nunez*, 211 Or App 545, 548-49, 155 P3d 96 (2007) (declining to exercise *Ailes* discretion to address unpreserved claim of error that trial court had erred in failing to make findings required by ORS 137.750 because, if the defendant had timely brought that matter to the trial court's attention, "it might easily have been remedied").

With respect to preservation, defendant acknowledges that his counsel was present when the court pronounced sentence but failed to make the findings described in ORS 137.750(1) and ORS 137.752(1) "on the record in open court." Thus, it is undisputed that defense counsel had a complete contemporaneous opportunity to bring the trial court's asserted error to the court's attention, but did not do so.[8] Nevertheless, defendant suggests that that unpreserved claim of prejudgment error was retroactively preserved by way of the subsequent, post-judgment filing of the motion under ORS 137.754.

We reject defendant's "retroactive preservation" proposition. No Oregon appellate decision has ever held that unpreserved prejudgment error can somehow be transmuted into preserved error by virtue of the filing and denial of a post-judgment motion. Specifically, no reported decision from our court or the Oregon Supreme Court has endorsed such "retroactive preservation" by way of a post-judgment motion under ORS 137.754, a motion under ORS 138.083(1),[9] a

---

[7] *See also State v. Fults*, 343 Or 515, 520-24, 173 P3d 822 (2007); *State v. Ramirez*, 343 Or 505, 509-14, 173 P3d 817 (2007) (both addressing the appellate court's discretion to consider error apparent on the face of the record).

[8] Consequently, this is not a case in which appellant was "blind-sided" by the trial court's ruling in such a way that he did not have a fair opportunity to raise a timely objection. *See, e.g., State v. Gutierrez*, 170 Or App 91, 94, 11 P3d 690 (2000) (principles underlying preservation requirements were not implicated where trial court *sua sponte* entered a judgment of dismissal with prejudice: "When the court has opted to act unilaterally and finally, without the benefit of input from the parties, there is no opportunity to bring the alleged error to the court's attention before it rules."). Rather, as noted, the trial court's noncompliance with ORS 137.752 was manifest at the time that it imposed sentence, but defense counsel said nothing.

[9] ORS 138.083(1) provides:

"The sentencing court shall retain authority irrespective of any notice of appeal after entry of judgment of conviction to modify its judgment and

motion under ORCP 71 B, or otherwise. That is unsurprising: The "bootstrapping" is patent.

Conversely, in an analogous context, we have rejected a criminal defendant's arguments that the filing of a post-judgment motion rendered unpreserved sentencing error reviewable. In *State v. Layton*, 163 Or App 37, 41, 986 P2d 1221 (1999), we held that the filing of a motion under ORS 138.083(1) with this court could not operate to retroactively preserve a challenge to a trial court's purported predicate sentencing error. In so holding, we observed, "We do not understand how raising the issue after trial somehow 'cured' defendant's failure to raise it at the proper stage of the proceedings, that is, at the sentencing hearing." *Id.*

The dissent contends, nevertheless, that *Layton* is materially distinguishable because, in its view, ORS 137.754 "is much broader in its application" than ORS 138.083(1). 218 Or App at 592 (Edmonds, J., dissenting). Specifically, the dissent asserts that, because of its introductory language ("[n]otwithstanding any other provision of law"), ORS 137.754 *"requires* trial courts to modify judgments to comply with ORS 137.750 and 137.752." *Id.* (emphasis in original). We respectfully disagree.

■ In *Layton*, 163 Or App at 41, we observed that,

> "[b]y its terms, ORS 138.083(1) merely grants authority to the trial courts during the pendency of an appeal to correct judgments. It does not require the trial courts to do anything."

The same is true of ORS 137.754, which, like ORS 138.083(1), merely provides that the sentencing court *"retains authority * * ** to modify its judgment and sentence"* in certain respects. ORS 137.754 (emphasis added). The "notwithstanding" phrase of ORS 137.754 that the dissent invokes merely

---

sentence to correct any arithmetic or clerical errors or to delete or modify any erroneous term in the judgment. The court may correct the judgment either on the motion of one of the parties or on the court's own motion after written notice to all the parties. If a sentencing court enters an amended judgment under this section, the court shall immediately forward a copy of the amended judgment to the appellate court. Any modification of the appeal necessitated by the amended judgment shall be made in the manner specified by rules adopted by the appellate court."

confirms the trial court's retention of authority in that regard; it does not mandate the exercise of that authority.[10] In sum, under both statutes, the trial court is permitted to exercise authority to modify, but neither "require[s] the trial courts to do anything." *Layton*, 163 Or App at 41. Thus, the dissent's asserted distinction of *Layton* is unavailing.

We acknowledge, as the dissent emphasizes, 218 Or App at 587-88 (Edmonds, J., dissenting), that the practical and prudential concerns that underlie our preservation requirements may well have been satisfied here—the trial court did, in fact, have the opportunity to address and correct the asserted antecedent error. But the same could also be said of a motion under ORS 138.083(1) or a variety of post-judgment/preappeal "motions for reconsideration." And yet, we have never deemed such motions to have retroactively "cured" a prior failure to preserve.

Further, although the dissent emphasizes that defendant filed, and the trial court denied, the ORS 137.754 motion before defendant filed the notice of appeal, that limitation is illusory. Rather, the logical extension of the dissent's reasoning is that, so long as the trial court had an opportunity to correct its error before we consider the appeal, the matter would be deemed "preserved." Thus, error could be retroactively "preserved" by filing a motion in the trial court under ORS 137.754—or, for that matter, under ORS 138.083(1)[11]—long after an appeal has been taken.

Finally, the dissent implies that ascribing such a retroactively preservative effect to the filing of a motion under ORS 137.754 comports with, and promotes, the legislature's intent in enacting that statute. That may be true, though such an intent is no more manifest in ORS 137.754 than in ORS 138.083(1). In all events, however, there is no obvious or

---

[10] We note, parenthetically, that nothing in the legislative history of ORS 137.754 corroborates the dissent's construction of the "notwithstanding" clause. *See generally* Minutes, Senate Crime and Corrections Committee, Mar 21, 1997, Tape 42, Side B; Minutes, House Committee on Judiciary, Subcommittee on Criminal Law Matters, Apr 8, 1997, Tape 80, Side B.

[11] *But see Layton*, 163 Or App 37.

necessary connection between that purpose and the abrogation of well-settled, universally applicable principles governing preservation of error. Certainly, nothing in the text of ORS 137.754 or in its legislative history[12] suggests that that statute is so special—indeed, unique—that filing a post-judgment motion under that statute will have the singular effect of retroactively preserving a challenge to prejudgment error.

 The dissent's efforts to cast this matter as preserved—and, hence, reviewable—are understandable. At least implicit in the dissent's approach is the recognition that the trial court's noncompliance with ORS 137.752(1) will otherwise escape correction—at least on direct appeal.[13] But that result—which is no different here than in countless other cases of unpreserved error—cannot alter controlling neutral principles: The filing of a post-judgment motion cannot retroactively preserve a challenge to prejudgment error.

We decline to review defendant's second assignment of error as unpreserved.

Affirmed.

**EDMONDS, J.,** concurring in part, dissenting in part.

The majority's interpretation of the "preservation of error" requirement in ORAP 5.45(1) with regard to defendant's second assignment of error is perplexing.[1] Nothing in the text of the rule requires a "contemporaneous" objection as

---

[12] 218 Or App at 586 n 10. *See generally* Minutes, Senate Crime and Corrections Committee, Mar 21, 1997, Tape 42, Side B; Minutes, House Committee on Judiciary, Subcommittee on Criminal Law Matters, Apr 8, 1997, Tape 80, Side B.

[13] Of course, the same is true in every case of unpreserved error, unless that error is "plain error" properly reviewed and corrected under *Ailes*. Failing that, criminal appellants are consigned, properly, to pursuing post-conviction remedies.

[1] ORAP 5.45(1) provides:

"A question or issue to be decided on appeal shall be raised in the form of an assignment of error, as prescribed in this rule. Assignments of error are required in all opening briefs of appellants and cross-appellants. *No matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court* and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may consider an error of law apparent on the face of the record."

(Emphasis added.)

the majority posits, and the majority cites no other authority for its imposition of that novel requirement. Moreover, the majority concedes that the "practical and prudential concerns that underlie our preservation requirements may well have been satisfied here—the trial court did, in fact, have the opportunity to address and correct the asserted antecedent error." 218 Or App at 586. In fact, the objectives of the preservation requirement were satisfied in a practical way in this case, as discussed more fully below. ORAP 5.45(1) embodies a policy of pragmatism. That policy is put aside by the majority's reasoning in favor of a hypertechnical application of the rule, and, for that reason, I dissent from the majority's disposition of the second assignment of error, while concurring with its analysis regarding the first assignment of error.

To reiterate the facts and the applicable law: ORS 137.750 *mandates* that, when a court sentences a defendant to a term of incarceration, the court shall order, on the record in open court as part of the sentence imposed by the court, that the defendant be considered for alternative sentencing programs "unless the court finds on the record in open court substantial and compelling reasons to order the defendant not be considered for such leave, release or programs." The trial court did not comply with ORS 137.750, even though defendant expressly asked it to make the findings required by the statute. Sentencing in this case was held on January 24, 2006. The sentencing judgment reflecting the January 24, 2006, hearing was entered January 26, 2006. Defendant filed a written motion requesting that the court comply with the provisions of ORS 137.750 on January 27, 2006, or one day after the entry of the judgment. The trial court denied the motion, even though ORS 137.754 provides, in part:

> "Notwithstanding any other provision of law, a sentencing court retains authority after entry of judgment of conviction to modify its judgment and sentence to comply with the requirements of ORS 137.750 or 137.752 when:
>
> "* * * * *
>
> "(3) The judgment and sentence failed to comply with the provisions of ORS 137.750 or 137.752."

To preserve an issue for appeal, "a party must provide the trial court with an explanation of his or her objection

that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Here, defendant brought the court's error to its attention while the court had authority, pursuant to ORS 137.754, to correct the error. Defendant did not file his notice of appeal in this case until February 23, 2006. At the time that defendant filed his motion, asking the court to make the findings required by ORS 137.754, the trial court continued to exercise exclusive jurisdiction over the case, and there is no prudential reason why the court could not have complied with the statute's requirements, had it been so inclined.

ORS 137.754 vests a trial court with continuing authority after entry of a judgment of conviction to modify its judgment and sentence to comply with the requirements of ORS 137.750 or ORS 137.752. The beginning point of the legislature's grant of authority to the trial court is the date of the entry of the initial judgment. The end of that grant of authority to trial courts occurs when the sentence has been completed. In other words, the legislature has granted trial courts limited jurisdiction during that period of time to comply with the unambiguous statutory requirement so that those administering the execution of sentences will be able to calculate the duration of sentences and determine how they are to be served. Under the majority's reasoning, that grant of jurisdiction in defendant's case becomes meaningless because he has been denied the ruling in the trial court to which the law may entitle him and because this court refuses to review his claim of error on preservation grounds. At best, defendant is left with a remedy under the Post-Conviction Relief Act, which means additional delay and a continuing ineligibility for alternative sanctions, all resulting in additional expense to the public. In that light, the legislature could not have contemplated the result reached by the majority, particularly in light of its use of the phrase, "Notwithstanding any other provision of law" in ORS 137.754.

Not only is the majority's reasoning contrary to the legislature's intent, it is also contrary to principles of preservation established by the Supreme Court. The Supreme Court

"has indicated that the rules pertaining to preservation of error in trial courts are intended to advance goals such as ensuring that the positions of the parties are presented clearly to the initial tribunal and that parties are not taken by surprise, misled, or denied opportunities to meet an argument."

*Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995). One of the goals of requiring a party to preserve an issue in a lower tribunal is to afford an opportunity to the tribunal to "correct the error immediately, if correction is warranted" in order to afford judicial economy. *Wyatt*, 331 Or at 343. "Judicial economy" is certainly not achieved in this case as the result of the majority's decision.

As importantly, the Supreme Court has never identified a "contemporaneous" objection as a goal of the prudential preservation of error requirement that is independent of the rule's policy objectives. To be sure, in some situations, the goals of preservation will not be satisfied in the absence of an immediate objection. For example, motions for mistrial must ordinarily be made immediately to preserve a claim of error. *E.g.*, *State v. Barone*, 328 Or 68, 90, 969 P2d 1013 (1998), *cert den*, 528 US 1135 (2000) ("To preserve error, a motion for a mistrial must be made timely, *i.e*, it must be made as soon as the objectionable statement or event occurs."). But the rule in that specific context exists only because it is necessary to meet the other objectives of preservation.

So, for example, as we explained in *State v. Vogh*, 179 Or App 585, 591, 41 P3d 421 (2002),

"[w]hen, as here, a defendant does not call the matter to the trial court's attention until after it is too late for the trial court to take corrective action, and defendant offers no explanation for why the issue was not or could not have been raised earlier, a denial of a motion for mistrial is not error."

But even then, we or the Supreme Court have never insisted on a strict rule that a motion for a mistrial must always be made immediately when the objectionable comment is made in order to preserve a claim of error. *See, e.g., State v. Cunningham*, 197 Or App 264, 275 n 7, 105 P3d 929, *rev den*, 339 Or 406 (2005) ("We assume, for the sake of argument, that the mistrial motion was timely despite the passage of a day, given that the court adjourned immediately after

excluding [the witness's] testimony and denying defendant's oral mistrial motion and that the written motion was filed the following morning.").

In short, as the majority recognizes, the goals of the preservation requirement are satisfied in this case. That said, no policy is served by the majority's creation of an artificial distinction between a "contemporaneous" and a "retroactive" objection based on the facts of this case. Rather, preservation must always be decided on a case-by-case basis, depending on the circumstances of the particular case and whether the objectives of preservation are satisfied. Thus, the "line drawing" exercise based on policy objectives, that ORAP 5.45(1) requires us to determine if an issue is preserved, is satisfied by the majority's necessary acknowledgment that defendant made his objection to the lack of findings by the court before he filed his notice of appeal and at a time when the trial court had authority to conform the judgment to the requirements of the statutes.[2] Unlike in situations where the trial court must act expeditiously to "unring a bell," the trial court in this case could have easily corrected its error when the error was brought to its attention, and there is no underlying preservation policy reason not to review it.

The majority also relies on our holding in *State v. Layton*, 163 Or App 37, 986 P2d 1221 (1999), *rev den*, 330 Or 252 (2000), in support of its reasoning. That case was decided under ORS 138.083(1)(a), which provides, in part, that "[t]he sentencing court shall retain authority irrespective of any notice of appeal after entry of judgment of conviction to modify its judgment and sentence to correct any arithmetic or clerical errors or to delete or modify any erroneous term in

---

[2] According to the majority, emphasizing the fact that defendant filed and the trial court denied his motion before he filed his notice of appeal is "illusory" because the "logical extension" of that reasoning is that "so long as the trial court had an opportunity to correct its error before we consider the appeal, the matter would be deemed 'preserved.' " 218 Or App at 586. But interpreting ORAP 5.45(1) to permit such an issue to be preserved for purposes of direct appeal at any time before the notice of appeal is filed, and before the trial court loses jurisdiction over the case, furthers the policy of judicial economy by consolidating all issues for purposes of appeal that are properly cognizable on direct appeal, rather than promoting a policy of "piece-meal" appeals that could arise from the trial court's exercise of continuing limited jurisdiction under ORS 137.754.

the judgment." Like ORS 137.750 to 137.754, ORS 138.083 constitutes a limited grant of jurisdiction to trial courts to address certain specific issues that could arise during the time that a criminal sentence is being executed, and thus, it can be reasonably argued that the policy underlying that statute is similar to the policy underlying the statutes applicable to this case.

ORS 137.754, however, contains a phrase that ORS 138.083 does not contain. ORS 138.083(1)(a), by its express terms, confers jurisdiction on trial courts "irrespective of any notice of appeal." In contrast, ORS 137.754 is much broader in its application because it *requires* trial courts to modify judgments to comply with ORS 137.750 and ORS 137.752, "[n]otwithstanding any other provision." The word "notwithstanding" in ORS 137.754, is not inconsequential regarding the legislature's intent. It embodies a legislative intent that ORS 137.750 to 137.754 constitute a self-contained statutory scheme that is discrete from any other law. In other words, different statutes with different language require separate consideration of the legislature's intent in order to construe them correctly.

But even if the above distinction in the language of ORS 138.083(1) is deemed a distinction without a difference, I would hold that *Layton* was incorrectly reasoned when considered in light of the objectives of the requirement of preservation. In *Layton*, the defendant argued that the sentence imposed by the court was unlawful because it added two years of post-prison supervision to five years of incarceration for a Class C felony. The defendant first raised that issue in the trial court under ORS 138.083 at a post-trial proceeding. We held that the issue therefore was not preserved. 163 Or App at 41. We explained, "[w]e do not understand how raising the issue after trial somehow 'cured' defendant's failure to raise it at the proper stage of the proceedings, that is, at the sentencing hearing." *Id.* The analytical mistake in *Layton* is the same mistake the majority makes here—failing to apply the policy objectives of ORAP 5.45(1) as the basis for determining whether a defendant preserved a claim of error.

For all of these reasons, I dissent to the majority's holding that defendant did not preserve his second assignment of error.

Carson, S. J., joins in this dissent.