Submitted August 27, 2009, affirmed April 14, appellant's petition for
reconsideration filed April 19 allowed by opinion July 28, 2010
See 236 Or App 461, _____ P3d _____ (2010)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## FRANK MARVIN PHILLIPS, JR.,
*Defendant-Appellant.*

Marion County Circuit Court
93C21516; A137773

229 P3d 631

Peter Gartlan, Chief Defender, and Zachary Lovett Mazer, Deputy Public Defender, Appellate Division, Office of Public Defense Services, filed the briefs for appellant. Frank Marvin Phillips, Jr., filed the supplemental brief *pro se*.

John R. Kroger, Attorney General, Erika L. Hadlock, Acting Solicitor General, and Inge D. Wells, Senior Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Defendant was convicted of two counts of contempt after he used profanity "in the immediate view and presence of the [trial] court." ORS 33.096. On appeal, he argues that the second count is not supported by any facts in the record and, in any event, it should be merged into the first count.[1] We conclude that defendant did not adequately preserve his claim of error. ORAP 5.45. We therefore affirm.

Defendant was convicted of several crimes in 1994. The post-conviction court vacated those convictions in 2007 and remanded the case to Marion County Circuit Court for a new trial. Before that trial, defendant requested that the court appoint a specific attorney, Simmons, to represent him; he objected to the appointment of any other attorney, stating in a November 13, 2007, letter to the court, "No Simmons, no deal. Simple as that." (Underscore in original.) The court contacted Oregon Public Defense Services on defendant's behalf. That office responded that it was unable to appoint Simmons, but would instead appoint another attorney, Lawrence. The court sent a November 15 letter to defendant notifying him of the appointment and, on November 26, entered an order appointing Lawrence.

On December 11, the trial court held a pretrial hearing to consider several motions that defendant had submitted *pro se*. Lawrence appeared on defendant's behalf, engaging in colloquy with the court regarding defendant's case and referring to defendant as "my client." Defendant, however, insisted that the purpose of the hearing was to determine whether he would be represented by counsel:

"[DEFENDANT]: Your Honor, we were here today to settle whether or not I was taking counsel.

"THE COURT: Right.

"* * * * *

---

[1] In additional assignments of error, defendant contends that we must vacate both counts because the contempt statutes are unconstitutionally vague under the Due Process Clause of the United States Constitution and because enforcing the statutes against him violates his freedom of expression under Article I, section 8, of the Oregon Constitution. We reject those assignments without discussion.

"[DEFENDANT]: So that's the first thing we're going to talk about today.

"THE COURT: Great. All right. * * *

"* * * * *

"[DEFENDANT]: We're talking about appointment of counsel right now. I don't appreciate the fact that these motions aren't filed.

"THE COURT: No. Motions don't get filed when you have a lawyer. We left here last—

"[DEFENDANT]: So we don't have a fucking lawyer.

"THE COURT: I'm holding you in contempt. You're getting 60 days for that right now, Mister—

"[DEFENDANT]: All right. That's good.

"THE COURT: Okay. And—

"[DEFENDANT]: I got more to say if you've got more time.

"THE COURT: No. You're excused from this right now. You don't swear at me. You're done.

"[DEFENDANT]: All right. And I don't have counsel.

"DEPUTY: Pick up your stuff. Let's go.

"THE COURT: Well, you have counsel if you—

"[DEFENDANT]: No, I do not.

"THE COURT: Yes, you—

"[DEFENDANT]: That's what we left the other day * * *[,] and that's the way it is.

"THE COURT: I'm not going to explain it to you anymore.

"[DEFENDANT]: We were settling that today.

"THE COURT: No.

"[DEFENDANT]: Yes, we were.

"THE COURT: No. You—

"[DEFENDANT]: That's what—

"THE COURT: We're done.

"[DEFENDANT]:    —one of the things we were going to do.

"THE COURT:   We're done.

"(Whereupon, the proceeding in the above-entitled matter was concluded * * *.)"

Later that day, the court signed a check-the-box "Judgment of Contempt" stating:

"THE COURT FINDS that on December 11, 2007, [defendant] came into the immediate view and presence of the court and did then and there commit Contempt of Court by willfully engaging in one or more of the following act(s):

"XX   1.   Misconduct in the presence of the court that interfered with a court proceeding or with the administration of justice, or that impaired the respect due the court; [and]

"XX   2.   Disobedience of, resistance to, or obstruction of the court's authority, process, orders or judgments[.]"

The checked statements are drawn more or less verbatim from definitions of "contempt" in ORS 33.015(2)(a) and (b). The court also noted that the "act(s) referred to * * * specifically consisted of: Using profanity in the presence of the court and directed at the court." Defendant was sentenced to "[c]onfinement in the county jail for 60 days as a punitive sanction (Not more than 30 days for each separate contempt)[.]"

■      On appeal, as noted, defendant challenges the judgment to the extent that it penalized him for the second contempt, "Disobedience of, resistance to, or obstruction of the court's authority, process, orders or judgments." He concedes that he did not preserve this claim of error in the trial court. He argues, however, that this case presents the rare factual scenario in which lack of preservation is not fatal to his appeal. He relies primarily on *State v. Gutierrez*, 170 Or App 91, 93-96, 11 P3d 690 (2000), and *State v. DeCamp*, 158 Or App 238, 241, 973 P2d 922 (1999), for the proposition that preservation of error is not required where it is not possible, and here, it was not possible because the record unambiguously demonstrates that the court summarily cut him off before he could object. In the alternative, he argues that we

should review his claims of error as apparent on the face of the record. ORAP 5.45(6). In response, the state argues that,

> "[a]lthough defendant is undoubtedly correct when he argues that the trial court was not willing to hear anything further from *him*, there is nothing in the record to suggest that the court would have been unwilling to hear from counsel regarding any of the issues defendant now raises on appeal."

(Emphasis in original.) Moreover, the state asserts, defendant's claims of error are not "apparent on the face of the record," because the legal points supporting those claims are "reasonably in dispute." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). For the reasons stated below, we agree with the state.

■       First, we conclude that defendant was represented by counsel at the hearing. ORS 9.380 provides that

> "[t]he attorney in an action, suit or proceeding may be changed, or the relationship of attorney and client terminated, as follows:
>
> "(1)   Before judgment or final determination, upon the consent of the attorney filed with the clerk or entered in the appropriate record of the court; or
>
> "(2)   At any time, upon the order of the court or judge thereof, based on the application of the client or the attorney, for good and sufficient cause."

Lawrence was appointed by the court to represent defendant in an order dated November 26, 2007. Defendant did not apply to the court to have that attorney-client relationship terminated, and at no point did Lawrence file his consent to its termination. Thus, Lawrence remained the attorney of record in defendant's case at the December 11 hearing.

        Second, it is beyond dispute that "defense counsel had a complete contemporaneous opportunity to bring the trial court's asserted error to the court's attention, but did not do so." *State v. Hammond*, 218 Or App 574, 584, 180 P3d 137 (2008). Counsel knew that he was defendant's attorney, referring to him as "my client." Yet, at no point during or

after the colloquy between defendant and the court did counsel interpose himself to make an objection. Although the record demonstrates that the court had no patience to hear from defendant after his "we don't have a fucking lawyer" comment, nothing in the record suggests that the trial court would not have heard an objection and argument from Lawrence.

Defendant's best argument that we should waive preservation is that counsel could not have known which arguments to make until after reviewing the court's written judgment, because only then did the court explain its rationale. However, the reason that he did not know the court's reasoning was because he did not ask for it or, more precisely, because he did not put the court on notice that he wanted the court to explain its reasoning so that he could object, if appropriate. In sum, preservation was required, and we cannot review defendant's assignment of error unless the error qualifies for plain error review and we exercise our discretion to review it.

■■    To qualify as plain, an asserted error must be purely legal in nature, the legal point must be beyond dispute, and "[w]e need not go outside the record or choose between competing inferences to find it." *Brown*, 310 Or at 355. Here, the asserted error is that the trial court's contempt conviction for "disobedience of, resistance to, or obstruction of the court's authority, process, orders or judgments," lacks a legally adequate factual foundation. That point is not obvious. Defendant's remark, "So we don't have a fucking lawyer," could plausibly be considered "resistance to" the court's assertion that defendant did, indeed, have a lawyer. It could also be considered resistance to the court's authority.

■■    And in any event, even if the asserted error were plain, we would not exercise our authority to review it. In deciding whether to exercise our discretion, we must take into consideration several factors, including the nature of the case, the competing interests of the parties, the gravity of the error, and the ends of justice in the particular case. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991). In this case, two facts are relevant: first, defendant

has already completed the 60-day sentence for contempt,[2] and second, during the entire period of that incarceration, he was also incarcerated on another matter. Thus, the asserted error was not grave and the ends of justice, although not perfectly served, were not seriously damaged. Further, the state's interest in avoiding a second judicial proceeding, while not huge, nonetheless outweighs defendant's interest in having a record that shows two contempts instead of one. For all of these reasons, we affirm.

Affirmed.

---

[2] The state filed a notice of probable mootness with respect to the first assignment of error. ORAP 8.45. The appellate commissioner issued an order determining that the first assignment of error is not moot. Neither party sought reconsideration of that order, and, in any event, we agree with the appellate commissioner. *See State v. Meyer*, 31 Or App 775, 777 n 1, 571 P2d 550 (1977) (appeal of second of two simultaneous contempt convictions not moot despite fact that contemnor had served both sentences); *but see State ex rel State of Oregon v. Hawash*, 230 Or App 427, 428, 215 P3d 124 (2009) (appeal of contempt is moot where contemnor has completed two years of probation and there are no other collateral consequences).