**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1328**

State of Minnesota,
Respondent,

vs.

Chad Michael Nowacki,
Appellant.

**Filed May 23, 2016
Affirmed
Stauber, Judge**

Swift County District Court
File No. 76-CR-09-105

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Danielle Olson, Swift County Attorney, Harry Hohman, Assistant County Attorney, Benson, Minnesota (for respondent)

John E. Mack, Mack and Daby, New London, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Connolly, Judge; and Stauber, Judge.

**S Y L L A B U S**

Because polygraph testing has not been proven reliable, polygraph test results are not admissible as substantive evidence of a probation violation in probation-revocation proceedings.

**O P I N I O N**

**STAUBER**, Judge

In this probation-revocation appeal, appellant argues that the district court's finding that he violated the terms of his probation was an abuse of discretion because the district court improperly considered references to appellant's failed polygraph examination. We agree that the district court abused its discretion by permitting references of appellant's failed polygraph examinations at the revocation hearing, but we affirm because, on this record, the error was harmless.

**FACTS**

In February 2010, appellant Chad Nowacki pleaded guilty to third-degree criminal sexual conduct. Appellant received a stay of adjudication and was placed on probation for a period of 15 years. The conditions of his probation included the "[s]uccessful completion of adult sex offender treatment program that deals with both sex offending behavior and sexual addiction," and the submission "to Polygraph Examinations as Directed at [appellant's] expense as requested by probation or treating professionals."

In August 2011, appellant violated the conditions of his probation by failing to keep his probation agent informed of his residence. A second violation occurred in June 2013, after appellant was terminated from the out-patient sexual offender program. In both instances, appellant retained his stay of adjudication.

A third probation violation report was filed in February 2015. The report alleged that appellant violated the conditions of his probation by failing to complete the sex-offender treatment program. At a contested revocation hearing, appellant's therapist

2

Rebecca Hoffman testified that appellant was "struggling in his sex offender treatment." In explaining appellant's struggles, Hoffman noted that polygraph examinations are used in treatment to "make sure . . . the person is being honest" when "talking about their sexual thoughts." Hoffman then referenced appellant's multiple failed polygraphs and his subsequent statement that "he felt the reason why he had been found to be dishonest on the polygraph was because he had been withholding sexual thoughts that he'd had about his daughters." Appellant objected to the reference to the polygraph examinations, and the district court overruled the objections. Hoffman further testified that appellant was eventually terminated from the sex-offender treatment program for failing to follow through with her recommendations.

Following the hearing, the district court found that appellant violated probation by "failing to complete outpatient sex offender treatment." The district court then revoked appellant's stay of adjudication, entered a judgment of conviction, and imposed a sentence of 36 months. But, the district court stayed execution of the sentence, ordered appellant to serve 30 days in jail, and reinstated him on probation. This appeal followed.

**ISSUE**

Did the district court abuse its discretion by allowing appellant's therapist to refer to appellant's failed polygraph examinations at a probation-revocation hearing that resulted in the revocation of appellant's stay of adjudication?

**ANALYSIS**

If the district court finds that a probation violation occurred, the district court may continue probation, impose intermediate sanctions, or revoke probation and execute a

3

stayed sentence.  Minn. Stat. § 609.14, subd. 3(2) (2014).  The district court must apply the *Austin* factors before revoking a defendant's probation.  *State v. Cottew*, 746 N.W.2d 632, 636-37 (Minn. 2008); *see also State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980) (holding that "before probation [is] revoked, the [district] court must (1) designate the specific condition or conditions that were violated; (2) find that the violation was intentional or inexcusable; and (3) find that the need for confinement outweighs the policies favoring probation").  But when a probation-violation proceeding results in the imposition of intermediate sanctions, rather than in the revocation of probation and execution of a defendant's sentence, the *Austin* analysis does not apply.  *Cottew*, 746 N.W.2d at 638.  Before imposing intermediate sanctions, the district court is only required to "determine whether there is clear and convincing evidence that a condition of probation has been violated."  *Id.*

Appellant argues that the district court abused its discretion by finding clear and convincing evidence that he violated the terms of his probation and imposing intermediate sanctions because, in making that determination, it improperly considered references to a failed polygraph examination.  "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent an abuse of discretion."  *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted).  A district court abuses its discretion when it acts "arbitrarily, capriciously, or contrary to legal usage."  *State v. Profit*, 591 N.W.2d 541, 464 n.3 (Minn. 1999) (quotation omitted).  "On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced."  *Amos*, 658 N.W.2d at 203.

4

It is well established that the "results of polygraph tests, as well as evidence that a defendant took or refused to take such a test, are not admissible in Minnesota in either criminal or civil trials." *State v. Opsahl*, 513 N.W.2d 249, 253 (Minn. 1994); *State v. Fenney*, 448 N.W.2d 54, 61 (Minn. 1989); *State v. Dressel*, 765 N.W.2d 419, 426-27 (Minn. App. 2009), *review denied* (Minn. Aug. 11, 2009); *State v. Winter*, 668 N.W.2d 222, 225 (Minn. App. 2003). A rationale for not admitting polygraph test results is that they do not meet the *Frye-Mack*[1] standards for reliability in order to be admissible scientific evidence. *State v. Anderson*, 379 N.W.2d 70, 79 (Minn. 1985); *see State v. Kolander*, 236 Minn. 209, 221-22, 52 N.W.2d 458, 465 (1952) (stating that the rationale for the rule prohibiting the admissibility of polygraph-related evidence is that polygraph examination does not have "such scientific and psychological accuracy, nor its operators such sureness of interpretation of results shown therefrom, as to justify submission thereof to a jury as evidence of the guilt or innocence of a person accused of a crime").

Although evidence of a polygraph is generally inadmissible at trial as a matter of law, Minn. Stat. § 609.3456 (2014) allows the district court to order that an offender submit to polygraph examinations as a condition of probation when the offender has received a stay of imposition or execution of sentence. Specifically, section 609.345 provides:

> (a)     A court may order as an intermediate sanction under section 609.135 and the commissioner of corrections may order as a condition of release under section 244.05 or 609.3455 that an offender under supervision for a sex offense

---

[1] *Frye v. United States*, 293 F. 1013, 1014 (D. C. Cir. 1923); *State v. Mack*, 292 N.W.2d 764, 768 (Minn. 1980).

> submit to polygraphic examinations to ensure compliance with the terms of probation or conditions of release.
>
> (b) The court or commissioner may order the offender to pay all or a portion of the costs of the examinations. The fee may be waived if the offender is indigent or if payment would result in an economic hardship to the offender's immediate family.

*Id.*

Appellant argues that despite the district court's authority under section 609.3456 to order an offender to submit to polygraph examinations as a condition of probation, any reference to the results of a polygraph "may not be used in a probation revocation hearing." To support his claim, appellant cites a case from Virginia. In that case, the defendant was ordered to participate in sex-offender treatment as a condition of his probation, which included the utilization of polygraph testing. *Turner v. Virginia*, 685 S.E.2d 665, 666 (Vir. 2009). Over defendant's objection, the results of the defendant's polygraph tests were admitted into evidence at a subsequent probation-revocation hearing. *Id.* at 666-67. On appeal from the revocation of the defendant's probation, the Virginia Supreme Court held that polygraph results are inadmissible in probation-revocation proceedings. *Id.* at 667. In so holding, the court noted:

> We do not, however, by this holding intend to impose any restrictions on the use of the polygraph as a tool in law enforcement or in the treatment, therapy, monitoring or evaluation of offenders, although those making use of such tests should be aware that the results will not be admissible in judicial proceedings. Any voluntary statements or admissions made by a person being tested remain admissible subject to the ordinary rules of evidence. Our holding is limited to the exclusion of the opinions of the polygraph operator or others purporting to offer expert opinion interpreting the test results.

6

*Id.* at 667-68. The court further concluded that the error was not harmless in that case because "we cannot ascertain from the record the extent, if any, to which the error may have contributed to the punishment imposed." *Id.* at 668.

We agree that *Turner* is persuasive, particularly because such a conclusion is consistent with longstanding Minnesota caselaw holding that the results of polygraph testing are inadmissible in criminal or civil trials. *See e.g., Fenney*, 448 N.W.2d at 61; *Perry*, 274 Minn. at 12, 142 N.W.2d at 580. And, in addition to Virginia, other jurisdictions prohibit the admission of polygraph test results in probation-revocation proceedings as well. *See e.g., Leonard v. State*, 315 S.W.3d 578, 580-81 (Tex. App. 2010); *Lane v. State*, 762 So.2d 560, 561 (Fla. Dist. Ct. App. 2000); *but see State v. Lumley*, 977 P.2d 914, 921 (Kan. 1999) (holding that the results of a polygraph examination are admissible in a probation-revocation proceeding because a probation-revocation hearing is not an adversarial criminal proceeding, but rather a civil matter with more flexible procedures); *Hoeppner v. State*, 918 N.E.2d 695, 700 (Ind. Ct. App. 2009) (same); *State v. Hammond*, 180 P.3d 137, 141-42 (Or. Ct. App. 2008) (holding that polygraph results are admissible in probation-revocation proceedings because those proceedings are not governed by the rules of evidence). We acknowledge that probation revocation hearings are not subject to the rules of evidence, from which the inadmissibility of polygraph test-results stems.[2] *See* Minn. R. Evid. 1101(3) (stating that

---

[2] We note that similar to our rules of evidence, Virginia's rules of evidence provide that "adherence to the Rules of Evidence . . . is permissive, not mandatory, in the following situations: (1) Criminal proceedings other than (i) trial, (ii) preliminary hearings, (iii)

the rules of evidence do not apply in proceedings "granting or revoking probation"). But a probation violation must be proven clear and convincing evidence. *See* Minn. R. Crim. P. 27.04, subd. 2 (permitting probation revocation on finding clear and convincing evidence of probation violation). Evidence, of a failed polygraph test, that has not been proven reliable, cannot be clear and convincing evidence of a probation violation. Therefore, because polygraph testing has not been proven reliable, the admission of polygraph test results as substantive evidence of a violation in probation-revocation proceedings is improper.

We note, however, that consistent with Minn. Stat. § 609.3456, our holding is not intended to impose any restrictions on the use of polygraph testing as a tool in law enforcement or in treatment, therapy, monitoring, or evaluation of offenders. And because section 609.3456 allows the use of polygraph testing as condition of probation, evidence that an offender refused to take a polygraph would be admissible to prove a violation of such a condition of probation. This is distinct from the results of a polygraph being admitted as substantive evidence to prove that an offender violated other conditions of probation. For example, if a condition of an offender's probation is that he not view pornography, and he later fails a polygraph-test after insisting that he did not view pornography, the results of that test are not admissible to prove that the offender violated the condition of his probation by not viewing pornography.

---

sentencing proceedings before a jury, and (iv) capital murder sentencing hearings." VA. R. Evid. 2:1101(c).

Here, the references to the polygraph examinations were not admitted to show that appellant violated the condition of probation that he submit to polygraph testing. Rather, the references alluded to appellant's failed polygraph tests, a factor that hindered appellant's progress in treatment. In other words, the admission of appellant's failed polygraph tests was used as substantive evidence of appellant's failure to complete treatment. Therefore, we conclude that the district court abused its discretion by allowing references to appellant's failed polygraph tests at his probation-revocation hearing.

Appellant argues that like *Turner*, it "can hardly be said that the fact that the [d]istrict [c]ourt determined that [he] had been lying about his sexual fantasies, had no influence on the court's disposition of the case." Thus, appellant argues that the matter should be remanded for a new revocation hearing on the issue of the penalty to be imposed for the probation violation, without consideration of the references to the polygraphs.

We disagree. The district court's finding that appellant violated his probation was not premised on appellant's failed polygraph. In fact, appellant admitted that he was not being honest about his sexual thoughts, which was the basis for the failed polygraphs. Instead, appellant's probation violation was his failure to complete sex-offender treatment, and his failure to complete treatment was based on a myriad of reasons, not just the failed polygraphs. Testimony was presented at the revocation hearing that in June 2014, appellant was "struggling in his sex offender treatment." Consequently, Hoffman outlined "eight recommendations that he needed to address to remain in treatment." Hoffman testified that appellant failed or struggled to complete many of the

9

eight recommendations, which led to his discharge from treatment. Although the district court referenced the polygraphs at the end of the revocation hearing when imposing the consequences for the violation, the references were part of a lecture by the court informing appellant that the "[n]ext step is prison if there is another unsuccessful completion" of treatment. This was appellant's third violation, and the fact that the district court allowed appellant to remain on probation further supports a conclusion that the penalty on remand would be the same without consideration of the polygraph references. The district court has wide discretion at probation-revocation hearings. *See State v. Ornelas*, 675 N.W.2d 74, 79 (Minn. 2004) (acknowledging the district court's broad discretion in probation-revocation matters). Accordingly, we are certain that, on this record, the error in admitting the references to the polygraph did not affect the district court's decision to revoke the stay of adjudication and impose a stayed prison sentence.

## D E C I S I O N

The district court abused its discretion by allowing references to appellant's failed polygraph tests at his probation-revocation hearing. But the district court did not indicate that appellant's polygraph results were the basis for the probation violation, and the record does not reflect any connection between failed polygraph results and the court's revocation decision. Therefore, we conclude that the admission of references to the failed polygraphs at appellant's probation-revocation hearing was harmless error.

**Affirmed.**

10